**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANGELA ZORICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No.** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ST. LOUIS COUNTY, and** | ) | |
| | ) | |
| **ROBERT M. RINCK, and** | ) | |
| | ) | |
| **COREY ZAVORKA, and** | ) | |
| | ) | |
| **JOHN PFANSTIEL, and** | ) | |
| | ) | |
| **MIKE FUMAGALLI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Angela Zorich and for her Complaint against Defendants St. Louis County, Robert M. Rinck, Corey Zavorka, John Pfanstiel, and Mike Fumagalli, states as follows:

## INTRODUCTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against St. Louis County, Robert M. Rinck, Corey Zavorka, John Pfanstiel, and Mike Fumagalli for violations of Ms. Zorich's rights guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America.

1

## JURISDICTION AND VENUE

2.      Jurisdiction is proper to this Court pursuant to 28 U.S.C. §§1331 and 1343.

Plaintiff invokes the supplemental jurisdiction of the Court to hear and decide Plaintiff's claims

under state law, pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are

located, and the events giving rise to Plaintiff's claims occurred, within the boundaries of this

judicial district

## PARTIES

4.      Plaintiff Angela Zorich (hereinafter "Ms. Zorich") is a citizen of the United States

of America and resident of the State of Missouri, residing within the boundaries of St. Louis

County, Missouri.

5.      Defendant St. Louis County is a body politic, organized and existing pursuant to

Missouri law.

6.      Defendant Robert M. Rinck (herein "Defendant Rinck") was, at all times relevant

hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis

County, and acting under color of law.  Defendant Rinck is named as a party to this litigation in

his individual capacity.

7.      Defendant Corey Zavorka (herein "Defendant Zavorka") was, at all times relevant

hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis

County, and acting under color of law.  Defendant Zavorka is named as a party to this litigation

in his individual capacity.

2

8.      Defendant John Pfanstiel (herein "Defendant Pfanstiel") was, at all times relevant hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis County, a supervisory officer holding the rank of sergeant, and acting under color of state law. Defendant Pfanstiel is named as a party to this lawsuit in his individual capacity.

9.      Defendant Mike Fumagalli (herein "Defendant Fumagalli") was, at all times relevant hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis County, a supervisory officer holding the rank of squad leader, and acting under color of state law. Defendant Fumagalli is named as a party to this lawsuit in his individual capacity.

## FACTUAL ALLEGATIONS

### *The April 23, 2014 Initial Complaint*

10.     At all times relevant hereto, Plaintiff Angela Zorich resided in a single-family home located in the unincorporated South County area of St. Louis County, Missouri.

11.     On April 23, 2014, Defendant Rinck received an "anonymous" complaint from Dan Dohrendorf, who reported that Ms. Zorich's natural gas service had been disconnected.

12.     Mr. Dohrendorf was a neighbor of Ms. Zorich, an employee of the Laclede Gas Company, and an acquaintance of Defendant Rinck.

13.     On information and belief, as of and prior to April 23, 2014, Defendant Rinck was assigned to Defendant St. Louis County's Problem Properties Unit with a patrol designation of "North."

14.     On information and belief, Defendant Rinck's designated assignment of "North" gave him patrol responsibilities for the areas of unincorporated St. Louis County that are geographically located to the north of Highway 40.

3

15.     As described by St. Louis County, the problem property unit investigates "poorly maintained properties" and enforces ordinances relating to "front yards overrun with vegetation, abandoned boats and scrap iron . . . houses with sagging porches and boarded-up windows . . . lots cluttered with engine blocks, bags of refuse and toppled over sheds."

16.     Based upon Defendant St. Louis County's patrol assignments into "North" and West" areas, the Zorich residence on Caprock Court was outside of Defendant Rinck's assigned patrol area.

17.     On information and belief, none of the complaints made by Mr. Dohrendorf fell within the scope of the problem properties unit's assigned investigative responsibilities.

### The April 25, 2014 Inspection of the Zorich Residence

18.     On Friday, April 25, 2014, Ms. Zorich received a call at work from her son who informed her that officers of the St. Louis County Police Department, led by Defendant Rinck, had been inspecting the outside of the Zorich home and were knocking on the door.

19.     On information and belief, Defendant Rinck entered into the backyard and/or other private areas of the Zorich property during his inspection.  At this time, Defendant Rinck did not have a warrant for entry onto the property nor were the any emergency or exigent circumstances which would have necessitated his entry onto the property.

20.     Upon leaving, one of the officers, believed to be Defendant Rinck, placed a sticker on the front window of the home marked "Problem Properties."

21.     Ms. Zorich called what she believed to be the appropriate office regarding the "Problem Properties" notice.

22.     Ms. Zorich spoke with a female employee at the office who informed Ms. Zorich that she could not find any record of problems at Ms. Zorich's address and then transferred Ms. Zorich to another employee's voicemail to leave a message.

**_The April 28, 2014 Discussions with Officer Rehagen and Defendant Rinck_**

23.     On Monday, April 28, 2014, Ms. Zorich again called the same office which she had contacted on the previous Friday.

24.     An employee of that office instructed Ms. Zorich to contact Officer Rehagen and/or Defendant Rinck and provided telephone numbers for both individuals.

25.     Ms. Zorich spoke with Officer Rehagen who informed her that an anonymous source reported that Ms. Zorich did not have working natural gas or electrical service at her address.

26.     Ms. Zorich explained to Officer Rehagen that the gas had been discontinued a few weeks prior but that the electrical service was active and working. Officer Rehagen accused her of lying about the electrical service and claimed to have verification from Ameren.

27.     At no point had there been any disruption or discontinuation of the electrical services at the Zorich home.

28.     When Ms. Zorich stated that the accusation regarding the discontinuation of the electrical service was untrue and "bullshit," Officer Rehagen abruptly hung-up on Ms. Zorich.

29.     Ms. Zorich immediately called back to continue the discussion, but Officer Rehagen refused to have further conversations and told her to call Defendant Rinck, as he was the officer in charge of the investigation.

30.     Ms. Zorich contacted Defendant Rinck as instructed by Officer Rehagen.

31.     Defendant Rinck was immediately and without cause hostile towards Ms. Zorich.

32.     Defendant Rinck stated that he was angry because Ms. Zorich's son had used profanity towards him.

33.     Ms. Zorich indicated to Defendant Rinck that she wanted to cooperate and resolve the matter.

34.      Defendant Rinck told Ms. Zorich that she would need to allow a housing inspector to access the interior of the premises to conduct an inspection.

35.     Ms. Zorich told Defendant Rinck that she would allow an inspection and asked to call back the next day with a proposed time when her husband could also be present for the inspection.

36.     Defendant Rinck agreed that Ms. Zorich would call him the next day but indicated that the investigation would continue in the interim.

37.     Defendant Rinck did not, at any time, explain what he meant by the statement that the investigation would continue nor did he give any indication that he felt Ms. Zorich was being uncooperative nor that he objected to her request to call the next day to schedule an inspection nor that he intended to seek a warrant to search the home.

38.     As of April 28, 2014, Ms. Zorich believed that she and Defendant Rinck had reached an understanding that she and her husband would allow Defendant Rinck and an inspector into her house and that the situation would be resolved when she called him the next day with proposed dates and times.

39.     Neither Officer Rehagen nor Defendant Rinck stated nor gave any indication to Ms. Zorich that they were investigating her for anything more than not having a working utility.

40.     On information and belief, there is no St. Louis County ordinance which makes it illegal and/or unlawful to not have working natural gas service.

6

***The April 29, 2014 Search Warrant Application.***

41.      On Tuesday, April 29, 2014 at 10:59 a.m., and despite his agreement with Ms.

Zorich to speak again that day to arrange a time when Ms. Zorich and her husband could both be

present to voluntarily cooperate with his request to allow an inspector to enter the home,

Defendant Rinck obtained a search warrant for the Zorich residence from St. Louis County

Municipal Court Judge Robert Adler.

42.      In seeking the search warrant, Defendant Rinck alleged in his application that

Plaintiff's home was in violation of St. Louis County building code ordinances, stating:

> ████████████, St. Louis, MO is being used in violation of St. Louis
> County Revised Ordinance <u>1110 (Property Maintenance Code), 1102 (Electrical),
> 1103 (Plumbing), 1108 (Mechanical)</u> . . .

43.      On information and belief, in seeking the warrant, Defendant Rinck gave no

indication to the Court that he was seeking a warrant for anything other than to investigate

alleged violations relating to municipal housing and property ordinances.

44.      At no time did Defendant Rinck either request that the Municipal Court authorize

the warrant to be served outside of normal knock and announce protocols (i.e., no-knock) nor

inform the Court that it was his intention to have the warrant served by the Tactical Response

Unit using no-knock protocols.

***The April 29, 2014 Raid on the Zorich Home and Killing of Kiya.***

45.      In serving his administrative and municipal warrant, Defendant Rinck deployed

the St. Louis County Police Tactical Response Unit to conduct a no-knock entry for alleged

violations of the property code.

46.      Defendant Rinck made the decision to secure a municipal warrant and utilize the

Tactical Response Unit to execute it despite the facts that: (1) he had spoken with Ms. Zorich a

day prior and she indicated her intention to allow an inspection of the home to occur forthwith, as soon as her husband could arrange time away from his employment; (2) Ms. Zorich had not refused to voluntarily comply with the inspection; (3) he and other officers had felt safe enough to walk around the exterior of the house and up to the front door without fear of violence just a few days prior; and (4) any alleged violations were demonstrably minor and did not pose an immediate risk to Ms. Zorich, to her family, or to the public.

47.     Defendant Rinck had ten (10) days in which to serve the warrant and there was no urgency or exigency that required its immediate execution.

48.     Sometime around noon on Tuesday, April 29, 2014, eight (8) or more uniformed and armed St. Louis County Police Department patrol officers along with at least nine (9) St. Louis County Police Department tactical officers, in full tactical attire and armed with Rock River Arms M-4 rifles, gathered in Ms. Zorich's suburban neighborhood to serve the administrative warrant.

49.     At approximately 12:41 p.m., the Tactical Response Unit conducted its no-knock entry into the home.

50.     On information and belief, it is the policy, practice, and/or preference of the Tactical Response Unit that it receive at least twenty-four (24) hours' notice prior to the serving of a search warrant in order to conduct surveillance, investigate persons who might be inside the home, and plan the entry.

51.     The time between Defendant's Rinck's obtaining the search warrant and the Tactical Response Unit's no-knock entry into the Zorich residence was less than two (2) hours.

8

52.     On information and belief, Defendant Rinck did not provide any reason or explanation to officers of the Tactical Response Unit for the immediate execution of the search warrant.

53.     On information and belief, Defendants Pfanstiel and Fumagalli were the Tactical Response Unit's commanding and/or supervisory officers at the scene at the time of the April 29, 2014 execution of the warrant and/or also actively participated in the entry into the Zorich residence.

54.     On information and belief, Defendants Pfanstiel and Fumagalli, as the commanding and supervisory officers, were responsible for approving the entry plan for execution of the search warrant which they developed with the assistance of and through discussions with Defendants Rinck and Zavorka.

55.     On information and belief, Defendants Pfanstiel and/or Fumagalli made the final decision to serve the administrative search warrant through a no-knock entry.

56.     Pursuant to the stated policies of Defendant St. Louis County, search warrants issued by the Municipal Court based on allegations of housing and/or property ordinance violations are to be served "by the case officer and the Problem Properties Detective . . . us[ing] routine knock and announce procedures."

57.     Pursuant to the stated policies of Defendant St. Louis County, the Tactical Response Unit is to be deployed to serve Municipal Court warrants only under extenuating circumstances or if forcible entry is required.

58.     Defendant St. Louis County maintains contradictory policies as it is also the written policy, and publicly stated on St. Louis County's website, that the Tactical Response Unit is used to execute all search warrants.

9

59.     On information and belief, there were no "extenuating circumstances" or need for a forcible, dynamic, and no-knock entry, justifying the use of the Tactical Response Unit to serve and/or execute the Municipal Court search warrant.

60.     On information and belief, Defendants Pfanstiel, Fumagalli, and/or Zavorka made the decision to execute the warrant through no-knock entry based on unsupported, vague, and untrue allegations made by Defendant Rinck about one of Ms. Zorich's sons.

61.     Defendant Rinck knew and/or should have known that the information he was providing Defendants Pfanstiel, Fumagalli, and/or Zavorka was misleading, untrue, and/or insufficient to justify serving the search warrant through a no-knock entry.

62.     On information and belief, Defendants Pfanstiel, Fumagalli, and/or Zavorka failed to undertake any efforts to independently verify the allegations made by Defendant Rinck about one of Ms. Zorich's sons and which served as the basis of their decision to make a no-knock entry into the Zorich residence.

63.     On information and belief, Defendant Rinck alleged to Defendants Pfanstiel, Fumagalli, and/or Zavorka that Ms. Zorich's son and/or someone inside the Zorich residence had used profanity towards him on April 25, 2014, thus giving them reason to question Defendant Rinck's motivations in obtaining a search warrant of the Zorich residence and/or the allegations he made regarding the threat level of persons inside the Zorich residence.

64.     Defendants Pfanstiel, Fumagalli, and/or Zavorka knew or should have known from experience based on their assignments to the Tactical Response Unit that a substantial percentage of the municipal search warrants served by the Tactical Response Unit for housing code violations were obtained by Defendant Rinck and that other officers from the problem

properties unit only infrequently sought search warrants based on allegations of housing code violations.

65.     On information and belief, Defendants Pfanstiel, Fumagalli, and/or Zavorka reviewed the search warrant prior to conducting a no-knock entry of the Zorich residence.

66.     Defendants Pfanstiel, Fumagalli, and/or Zavorka knew and/or should have known that nothing on the face of the warrant nor in Defendant Rinck's account of the April 25, 2014 events at the Zorich residence justified serving the municipal search warrant through a no-knock entry by the Tactical Response Unit.

67.     Defendants Rinck, Zavorka, Pfanstiel, and/or Fumagalli knew and/or should have known that there was at least one dog and possibly multiple dogs residing on the Zorich property and/or in the Zorich residence.

68.     St. Louis County policies governing the operations of the Tactical Response Unit, in place as of April 29, 2014, specified that "particular attention should be paid to . . . animals present."

69.     Despite having knowledge that at least one dog and possibly multiple dogs resided on the Zorich property and/or inside the Zorich residence, Defendants Pfanstiel, Fumagalli, Rinck, and/or Zavorka failed to undertake any adequate and/or reasonable measures to gather information about this dog.

70.     Despite their knowledge that at least one dog and possibly multiple dogs resided on the Zorich property and/or in the Zorich residence, Defendants Pfanstiel, Fumagalli, Rinck, and/or Zavorka failed to develop any non-lethal plan and/or consider any reasonable alternative for non-violently interacting with these dog(s) and/or any other family pet present on the property.

11

71.     At approximately 12:41pm on April 29, 2014, Ms. Zorich was sitting in her kitchen with Bridget Haman, the mother of her grandson.

72.     At approximately 12:41 p.m., the tactical unit battered in Ms. Zorich's front door.

73.     Upon entry, Defendant Zavorka immediately shot Kiya, the family dog, approximately three times.

74.     From the kitchen, Ms. Zorich heard a loud boom followed instantaneously by three quick pops.  Following the three pops, she then heard multiple voices shouting at once and yelling over each other.  She believes that some of the voices may have yelled "Search warrant." and/or "St. Louis County Police."

75.     At the moment she was shot, Kiya was sitting no more than three (3) to four (4) feet from Ms. Zorich's son, Joseph, who was holding his 5-month-old son, Chase (Ms. Zorich's grandson), and talking with his brother, Isaiah (Ms. Zorich's youngest son) while they played with the baby.  Further, Defendant Zavorka shot Kiya as she was lying next to and partly on top of a play tent belonging to Ms. Zorich's six (6) year-old daughter.  Ms. Zorich later found a shell casing inside the tent.

76.     Kiya had not acted aggressively, barked, or even moved other than to turn towards the noise before she was immediately and fatally wounded by bullets from Defendant Zavorka's M-4.

77.     On information and belief, Defendant Zavorka was the only officer who had entered the home at the moment the shots were fired.

78.     Kiya's bladder and bowels released and she fell to the floor as the remainder of the tactical unit entered the house.

79.     Ms. Zorich and Ms. Haman walked out of the kitchen very slowly with their hands in the air.

80.     Upon exiting the kitchen, Ms. Zorich saw an officer with a weapon against her son Isaiah's forehead and heard the officer state: "One word, Motherfucker, and I'll put three in you."

81.     Confronted with this horror and terror, Ms. Zorich involuntarily urinated on herself.

82.     Ms. Zorich saw her son Joseph holding his son -- her grandson -- on his lap while an officer pointed a rifle at Joseph and her grandson.  Her grandson was screaming and Joseph was attempting to hold him while raising an arm in the air.

83.     Ms. Zorich saw Kiya lying in her own waste and blood, struggling to breathe, with a gaping hole in her chest.  Ms. Zorich begged for someone to help Kiya.  None of the St. Louis County Police officers present took any steps to help Kiya.

### The Questioning and Arrest of Ms. Zorich.

84.     An officer led Ms. Zorich over to Kiya's body, who was still struggling to breathe.

85.     As the other persons in the home were led out, an officer ordered Ms. Zorich to kneel next to her son Isaiah just a few feet from where Kiya lay dying.

86.     Isaiah asked if he could hold Kiya and comfort her as she died, but the St. Louis County Police officers refused.

87.     While Ms. Zorich was on her knees next to her son and her dying dog, an officer, who Ms. Zorich believes to have been Defendant Rinck, squatted down over Kiya.

88.     Defendant Rinck positioned himself such that Ms. Zorich had to look over the dying Kiya to see and talk to him.

89.     Ms. Zorich asked Defendant Rinck "Why did you shoot her? She did nothing wrong.  She didn't even bark at you."

90.     While squatting over the dying Kiya, Defendant Rinck calmly stated that they were there because the natural gas had been turned off.

91.     Ms. Zorich grew more upset and kept asking for someone to help Kiya while Defendant Rinck continued to talk about the discontinued natural gas service.

92.     Defendant Rinck appeared frustrated that Ms. Zorich was not responding to his questions about the natural gas service but instead kept talking about Kiya.  At that point, Defendant Rinck angrily remarked "Oh my god, can we get animal control in here?"

93.     A woman in uniform, believed to be the animal control officer, entered with a leash but stopped abruptly when she saw Kiya lying on the floor.

94.     The uniformed woman picked up Kiya by her front and back legs and carried her outside and laid her on the sidewalk.

95.     An officer pulled Ms. Zorich to her feet and led her outside to the driveway.

96.     As she was led out of her home, Ms. Zorich heard an officer say "Well, that's what they get."

97.     As Ms. Zorich was led down her driveway towards a patrol car, she observed tactical officers celebrating, patting each other on the back, and high-fiving in her front yard.

98.     Defendant Rinck approached Ms. Zorich and again began speaking to her about the reason for the search being the discontinued natural gas service.  Ms. Zorich said "I can't

believe you did this.  We just spoke yesterday."  Defendant Rinck appeared agitated by this and said "Forget it, I'm done, get her out of here."

99.     Ms. Zorich saw Officer Jacobsmeyer, whom she recognized from previous meetings.  She said to Officer Jacobsmeyer "They killed Kiya."  Officer Jacobsmeyer responded "Angie [a name used only by Ms. Zorich's friends], I don't know what is going on.  They just called me to pick you up."

100.     Defendants handcuffed Ms. Zorich and placed her in the backseat of a police car. The car was parked near Kiya's dead body, which was still lying uncovered on the sidewalk. Ms. Zorich was left alone in the police car with Kiya's lifeless body in view.

101.     From the car, Ms. Zorich then watched as Kiya's lifeless body was placed in the back of a truck where a yellow tarp was thrown over her.  The animal control officer led Ms. Zorich's two other dogs out and placed them in the back of the same truck that held Kiya's body. The other dogs were visibly distressed by the sight and smell of their dead companion's body.

*Kiya*

102.     Kiya was a four (4) year-old mixed breed dog who had been part of the Zorich family since she was about four (4) weeks old.

103.     Kiya lived at Ms. Zorich's home and was owned and cared for by Ms. Zorich.

104.     Kiya had never shown aggression to any person.

105.     Kiya was a playmate and companion to Chase, Ms. Zorich's five (5) month-old grandson, and Alannah, her six (6) year-old daughter, and never showed any aggression towards the children.

15

106.    Officer Jacobsmeyer had previous encounters with Kiya.  The family had told him that Kiya was not aggressive and didn't bite.  On at least one occasion, Officer Jacobsmeyer had petted Kiya and had friendly interactions with her.

107.    Kiya did not act aggressively towards or even bark at Defendant Zavorka before he immediately fired his assault rifle at her after the tactical unit opened the door.

108.    Defendant Zavorka cannot articulate any behavior by Kiya, including growling, snarling, or barking, which could be considered a sign of aggression and/or justification for shooting and killing her.

109.    Defendants Rinck, Zavorka, Pfanstiel, Fumagalli, and the other responding officers knew or should have known that Kiya was present at the Zorich family home at the time of conducting their no-knock entry.

(a)    Defendant Rinck noted in his police report that Mr. Dohrendorf had told him that there was at least one dog on the property and Defendant Rinck had personally observed another dog, who did not match the dog described by Mr. Dohrendorf, during his April 25th visit to the home.

(b)    Defendant Rinck and/or other St. Louis County Police Department officers arranged to have officers of St. Louis County Animal Control on scene prior to the start of the raid.

(c)    In their pre-operation planning, members of the Tactical Response Squad, including at least Defendants Zavorka and Fumagalli, had discussed the fact that at least one dog was present on the property or in the home.

***The Search of the Zorich Residence.***

110.     As Ms. Zorich sat in the backseat of the patrol car, she observed officers entering her home carrying metal detectors.

111.     After Ms. Zorich was able to return to her home following her detention and questioning at a St. Louis County Police Station, she and her family discovered that closets had been searched, drawers and boxes appeared to have been opened, beds were overturned, and property that had been stored on shelves was thrown to the floor

112.     The St. Louis County Police Department and its officers had no reason to believe that any of these closets, drawers, or boxes could contain any evidence relating to the violations of the housing code as set forth in the search warrant.

113.     On information and belief, the St. Louis County Police Department and its officers did not find any illegal contraband, drugs, or firearms in the Zorich family home.

114.     The warrant was issued for a search of the home premised on Defendant Rinck's attestation that his purpose was to look for housing code violations.

***The Questioning by Defendant Rinck and Inspector Cross at the Police Station.***

115.     Defendants transported Ms. Zorich to the South County police station and placed her in a holding cell.

116.     While at the police station, Ms. Zorich was taken from her holding cell and led to an interrogation room.  Lieutenant Hoots entered and stated to Ms. Zorich: "You need to listen to me, we did not do this."  Ms. Zorich's was confused by this statement but, based on her best information and belief, thinks that Lieutenant Hoots was attempting to place the blame on the Tactical Operations Unit and not the officers from his precinct.  Following this conversation, Ms. Zorich was returned to her holding cell.

117.    A short time later, Ms. Zorich was led a few feet from her holding cell. Defendants Rinck and Housing Inspector Cross approached with approximately five (5) or six (6) other officers.  Defendant Rinck held a piece of paper just inches from Ms. Zorich's face and stated "We have condemned your house.  It is unsanitary and uninhabitable."  Housing Inspector Cross then shouted "And there's more coming for your deck."

118.    Before leaving the South County police station, Ms. Zorich was given an "Order to Vacate" signed by Housing Inspector Cross.

119.    From the South County police station, Ms. Zorich was placed in a police van which Ms. Zorich first went to Wentzville, Missouri, then to Florissant Missouri, and then to the St. Louis County jail facility in Clayton, Missouri.

120.     From the time of the police entry into the Zorich residence until arrival at the Florissant police station, approximately six (6) to seven (7) hours had passed.

121.    Ms. Zorich was not allowed to use the restroom to clean herself from when she had involuntarily urinated on herself during the raid and was forced to sit in her urine soaked clothes until she reached the Florissant, Missouri police station.

122.    Even after being allowed to clean herself at the Florissant, Missouri police station, she was forced to remain in her urine-soaked clothing until her final release several hours later.

123.    Following the incident, Ms. Zorich received a "Notice of Violation," signed by Housing Inspector Cross and which indicated that the document was from St. Louis County Department of Public Works.  This notice specified citations for: (1) "Siding, Missing or Deteriorated," (2) "Guardrail, Deteriorated or Missing," (3) "Screens, Torn or Missing," (4) "Window Glass, Broken," (5) "Deck, Porch or Patio, Deteriorated," and a handwritten notation

stating "Secure Rear Deck Door as not to open Repair are [*sic.*] Remove Rear Deck if Rebuilding permits required."

124.    After the raid, Ms. Zorich and her family were left homeless for approximately one (1) month.

### *The April 30, 2014 Complaint to the Division of Family Services*

125.    On or about April 30, 2014, Defendant Rinck was contacted by St. Louis County Police Officer Logaglio.

126.    Officer Logaglio stated to Defendant Rinck that Ms. Zorich's son, Isaiah, had posted a video on social media which was taken from inside the Zorich home, which depicted portions of Defendant Rinck's April 25, 2014 visit to the home. The video had a caption of "FTP" which Defendant Rinck claims to mean "fuck the police."  In the video, an unidentified voice is heard to state "fuck the police."

127.    On April 30, 2014 and after learning of the Facebook video from Officer Logaglio, Defendant Rinck made a hotline complaint/notification to the Child Abuse/Neglect hotline regarding Ms. Zorich and her daughter, Alannah.  This complaint was made five (5) days after Defendant Rinck first knew and/or should have known that Ms. Zorich had a minor child and after he had inspected the exterior of the Zorich residence.

128.    On information and belief, Defendant Rinck has a statutory and lawful duty to immediately report any suspicions of child neglect to the proper authorities upon learning of them.

129.    Defendant Rinck was informed by at least one of Ms. Zorich's neighbors that a minor child was residing in the residence on April 25, 2014 but did not make any reports to the Child Abuse/Neglect Hotline at that time.

130.    Defendant Rinck did not ask Ms. Zorich if any minor children were residing in the home nor indicate to Ms. Zorich during their April 28, 2014 conversation that he had any concerns about the safety of any minor children who might be living in the Zorich residence.

131.    Defendant Rinck knew and/or should have known that a minor child resided in the Zorich residence on April 29, 2014 after his inspection of the Zorich residence but did not make any reports to the Child Abuse/Neglect Hotline at that time.

132.    Social services subsequently conducted a full investigation of Defendant Rinck's allegations and found them to be unsubstantiated and took no action against Ms. Zorich.

### *St. Louis County's Policies, Practices, Failure to Train, and Failures to Implement Policies*

133.    Defendant St. Louis County has a stated policy of deploying its Tactical Response Unit for serving all search warrants, as contained both in its policy manuals and as stated on its website.

134.    On information and belief, Defendant St. Louis County's policy, pattern, and practice of deploying its Tactical Response Unit to serve all search warrants applies without regard for the underlying basis, purpose, and/or allegations for the search warrant; without any consideration for nor determination of potential threat level or lack thereof in serving the warrant; and/or for administrative search warrants issued by the Municipal Court based on allegations of violations of housing and/or property codes.

135.    On information and belief, Defendant St. Louis County's Tactical Unit is comprised of two (2) squads consisting of nine (9) officers.  These tactical officers are trained in and carry deadlier weaponry than normal patrol officers, including M-4 assault rifles, and receive enhanced training in special weapons and paramilitary tactics.

136.    On or about October 2, 2015, the United States Department of Justice, Office of Community Oriented Policing, released a report entitled "Collaborative Reform Initiative: An Assessment of the St. Louis County Police Department." This report, based on a multi-year study of the St. Louis County Police Department, was critical of St. Louis County's past pattern and practice of overreliance on its Tactical Operations Unit and tactical policing and underemphasis on less violent community oriented policing policies and less intrusive means of problem solving.

137.    On information and belief, Tactical Response Unit officers frequently encounter dogs in the process of performing their duties, in possibly half (50%) or more of their deployments.

138.    While Defendant St. Louis County had a stated policy as of April 29, 2014 that Tactical Response Unit officers should pay particular attention to the presence of any animals on a property in executing a search warrant on such property, St. Louis County failed to provide its Tactical Response Unit officers with any specific or particularized policies and/or training to carry out this directive, including but not limited to failing to provide training in canine behavior, threat analysis, and/or non-lethal strategies or tactics to confront canines.

139.    Defendant St. Louis County's policies governing the serving of search warrants by Tactical Response Unit referenced the need for officers to pay particular attention to the presence of animals in preparing for the execution of the warrant as far back as 1994. However, as of June 1, 2014 – approximately one (1) month after the killing of Kiya – Defendant St. Louis County deleted this reference from its policies and currently provides no formal policy guidance nor training to its Tactical Response Unit officers and/or other officers regarding this issue.

21

140.    On information and belief, Defendant St. Louis County has received both internal and citizen complaints against Defendant Rinck and/or has disciplined him for infractions on more than one occasion.

141.    On at least one occasion, a St. Louis County resident alleged that Defendant Rinck:

(a)    accompanied a representative of a utility to his residence to allegedly investigate a violation of a municipal ordinance relating to utility services;

(b)    conducted an outside inspection of the residence;

(c)    unlawfully entered the residence without a warrant;

(d)    unlawfully searched the residence, including drawers, cabinets, and closets despite the fact that those locations could hold any evidence of the alleged housing code violation that was the subject of the investigation;

(e)    threatened to shoot the resident;

(f)    threatened to shoot the resident's dog;

(g)    issued the resident a citation(s) for alleged violations of the municipal ordinances relating to property and housing codes; and

(h)    attempted to evict and/or actually evicted the resident from his home for a period of time.

142.    Defendant St. Louis County was aware of these allegations as early November 2011 when the complaining resident filed a lawsuit against St. Louis County, Defendant Rinck, and others.

143.    On information and belief, Defendant Rinck has a reputation amongst his peers and/or supervisors for being an aggressive officer, including but not limited to having a

22

proclivity for obtaining search warrants based on alleged violations of municipal ordinances governing housing and/or property codes and having that the Tactical Response Unit execute those search warrants.

144.    Despite the fact that Defendant St. Louis County was aware of Defendant Rinck's prior history, other complaints regarding his behavior, and his pattern and practice of using the Tactical Response Unit to execute search warrants for violations of the housing and/or property code, Defendant St. Louis County failed to take any disciplinary actions against him.

## CAUSES OF ACTION

## COUNT I

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK*

### (For the Search and Seizure of the Zorich Residence)

145.    Ms. Zorich re-alleges and incorporates by reference the allegations contained in paragraphs 4 through 139 as if set forth fully herein.

146.    As described herein, Defendant Rinck, while acting under color of state law and acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

(a)    entering into the curtilage and/or other private and protected areas of Ms. Zorich's property without a warrant and/or in the absence of any exigent circumstances to justify such an intrusion;

23

(b)       seeking, obtaining, and/or executing an administrative search warrant for
Ms. Zorich's home, for nothing more than the attested purpose of
searching the interior of the home for evidence of property and housing
code violations, and when such an interior search was not supported by
sufficient evidence of violations and/or adequate probable cause;

(c)       seeking, obtaining, and/or executing an administrative search warrant for
Ms. Zorich's home despite that fact that Ms. Zorich had affirmatively
consented to allowing such a search and/or had not explicitly nor directly
refused to consent to such a search;

(d)       requesting, obtaining, and/or directing the deployment of a Tactical
Response Unit to effect a no-knock entry for purposes of executing an
administrative search warrant, which was based on demonstrably minor
allegations of property and housing code violations and which posed no
immediate threat to the health and safety of the occupants of the home or
the public at large, and with full knowledge that such force was
unreasonable and excessive;

(e)       searching and/or directing searches of areas of the home outside of the
scope of the search warrant and where he could not reasonably expect to
find any evidence of the alleged property and housing code violations as
set forth on the face of the warrant; and

(f)        issuing a condemnation and vacate order to Ms. Zorich despite the fact
that his interior search of the property and/or alleged evidence of
violations of the property and housing codes did not support such an order.

24

147.    As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

148.    The acts of Defendant Rinck were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Rinck.

149.    As a result of Defendant Rinck's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT II

### *UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK*

### (For the Killing of Kiya)

150.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 4 through 139 as if set forth fully herein.

151.    As described herein, Defendant Rinck, while acting under color of state law and acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

        (a)    unlawfully and unreasonably executing a search warrant on Ms. Zorich's home which resulted in the shooting and killing of Kiya, Ms. Zorich's family pet;

        (b)    requesting, obtaining, and/or directing the deployment of a Tactical Response Unit to execute the administrative search warrant with full awareness of the tactics that would be employed by that Unit, including making violent and no-knock entry, would likely result in the injury and/or death to the pet(s) that he knew and/or should have known were in the home; and

        (c)    failing to properly develop any non-lethal plan for confronting any animals that he knew and/or should have known to likely be present in the Zorich residence.

152.    As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

153.    The acts of Defendant Rinck described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or

26

callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Rinck.

154.    As a result of Defendant Rinck's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT III

### UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK

155.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 4 through 140 as if set forth fully herein.

156.    As described herein, Defendant Rinck, while acting under color of state law and acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America in that:

(a)    Ms. Zorich and/or persons associated with her, including her family members and/or persons inside her home, engaged in speech that is protected under the First Amendment to the Constitution of the United States.

27

(b)     In retaliation for these exercises of protected speech, Defendant Rinck
secured an administrative search warrant, orchestrated a no-knock entry by
the St. Louis County Tactical Unit, and/or made unfounded allegations of
child abuse and neglect to state authorities.

(c)     Defendant Rinck's desire to suppress, chill, and punish this protected
speech was a substantial or motivating factor in Defendant's Rinck's
taking of the herein complained of actions.

157.     As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich
has suffered injuries and damages, including but limited to: infringements and deprivations of
her constitutional rights; great fear for her safety and that of her family and dog; pain of the
mind; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her
society, and consternation.

158.     The acts of Defendant Rinck described herein were undertaken intentionally,
wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or
callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive
damages against Defendant Rinck.

159.     As a result of Defendant Rinck's unlawful actions and infringements of her
protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore
entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment
in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual
capacity and award her any and all compensatory damages, punitive damages, attorneys' fees,

28

expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT IV

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COGNIZABLE UNDER MISSOURI COMMON LAW AGAINST DEFENDANT ROBERT M. RINCK*

160.    Ms. Zorich re-alleges and incorporates by this reference the factual allegations contained in paragraphs 4 through 139 as if fully set forth herein.

161.    As described herein, Defendant Rinck's acted in actions that were extreme and outrageous, including but not limited to:

        (a)    authorizing and deploying a tactical operations unit to conduct a no-knock entry to serve an administrative search warrant based on demonstrably minor allegations of not having working natural gas service and/or being in violation of housing and/or property ordinances;

        (b)    forcing Ms. Zorich to kneel next to her dying pet while he accused her of failing to pay her natural gas bill; and

        (c)    having Ms. Zorich detained in a police car just feet from where the body of her dead pet lay uncovered for over an hour was extreme and outrageous.

162.    In undertaking these actions, Defendants Rinck acted intentionally and/or recklessly; knew and/or should have known that his actions would result in the infliction of emotional distress upon Ms. Zorich; and acted with the sole motivation of inflicting such emotional distress.

163.    The conduct of Defendants Rinck complained of herein was so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

164.    As a result of the conduct of Defendant Rinck, Ms. Zorich has suffered extreme emotional distress, including suffering from one or more stress and/or anxiety-related mental health issues.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor against Defendant Rinck for intentional infliction of emotional distress and award her any and all compensatory damages, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just and appropriate.

## COUNT V

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT COREY ZAVORKA*

**(For the Search and Seizure of the Zorich Residence)**

165.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 4 through 139 as if set forth fully herein.

166.    As described herein, Defendant Zavorka, while acting under color of state law, acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

(a)    executing an administrative search warrant and entering Ms. Zorich's home, through a no-knock entry, despite the fact that he knew and/or

should have known that such actions were unreasonable and/excessive; and

(b)   searching areas of the home outside of the scope of the search warrant and in which he could not reasonably expect to find any evidence of the alleged violations as set forth on the face of the warrant and/or in a manner which was unreasonable and/or excessive

167.   As a direct and proximate result of the conduct of Defendant Zavorka, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

168.   The acts of Defendant Zavorka were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Zavorka.

169.   As a result of Defendant Zavorka's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Zavorka in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT VI

### *UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT COREY ZAVORKA*

### (For the Killing of Kiya)

170.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 4 through 139 as if set forth fully herein.

171.    As described herein, Defendant Zavorka, while acting under color of state law, acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

(a)    unlawfully and unreasonably executing an administrative search warrant and entering Ms. Zorich's home, through no-knock entry, which resulted in the shooting and killing of Kiya, Ms. Zorich's family pet;

(b)    executing an administrative search warrant and entering, Ms. Zorich's home, through no-knock entry, with full awareness of the tactics that he would employ, including making violent and no-knock entry, would likely result in injury and/or death to the pet(s) he knew and/or should of known to be present in the home; and

(c)    failing to develop any non-lethal plan and/or consider any non-lethal alternatives for confronting any pet(s) that he knew and/or should have known to be present may have been in the Zorich residence; and

(d)    unlawfully and unreasonably shooting and killing Kiya when she did not present a threat to him and he knew and/or should have known that such actions were unwarranted under the circumstances.

172.     As a direct and proximate result of the conduct of Defendant Zavorka, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

173.     The acts of Defendant Zavorka described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Zavorka.

174.     As a result of Defendant Zavorka's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Zavorka in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT VII

### UNLAWFUL VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS COREY ZAVORKA

### (Failure to Intervene)

175.     Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 4 through 139 as if set forth fully herein.

176.    As described herein and at all times relevant hereto, Defendant Zavorka, was a sworn police officer acting under color of state law and, as sworn police officers acting under color of state law, Defendants Zavorka had a duty to intervene and prevent other police officers from violating Ms. Zorich's constitutionally protected rights

177.    As described herein, Defendants Rinck, Pfanstiel, and Fumagalli, while acting under color of state law and individually and in concert with others, violated Ms. Zorich's protected First, Fourth, and Fourteenth Amendment rights

178.    Defendants Zavorka had reasonable opportunity to intervene to prevent the actions described herein, including but not limited to by raising objections to the search warrant and the manner in which it was to be executed after review of the warrant and during the pre-operation planning phase.

179.    Despite having both a duty and opportunity to intervene to prevent the unlawful and unreasonable acts of Defendants Rinck, Pfanstiel, and Fumagalli, Defendant Zavorka failed to take any actions to prevent his fellow officers from engaging in violations of Ms. Zorich's protected rights.

180.    The acts of Defendant Zavorka, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendants Zavorka.

181.    As a result of Defendants Zavorka's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

34

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Zavorka in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT VIII

### CONVERSION COGNIZABLE UNDER MISSOURI COMMON LAW
### AGAINST DEFENDANT ZAVORKA

182.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 4 through 139 as if set forth fully herein.

183.    Ms. Zorich was the lawful owner of Kiya.

184.    Defendant Zavorka took possession and control of Kiya by intentionally killing her.

185.    As a result, Defendant Zavorka deprived Ms. Zorich of her right to possession of Kiya.

186.    As a direct and proximate result of the conduct of Defendant Zavorka, Ms. Zorich has suffered injuries and damages, including but limited to: great fear for her safety and that of her family and dog; pain of the mind; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

187.    The acts of Defendant Zavorka described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Zavorka.

35

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor against Defendant Zavorka for conversion and award her any and all compensatory damages, punitive damages, expenses, costs, and any other such relief to which she is entitled and that this Court deems just and appropriate.

**COUNT IX**

***INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COGNIZABLE UNDER
MISSOURI COMMON LAW
AGAINST DEFENDANT COREY ZAVORKA***

188.    Ms. Zorich re-alleges and incorporates by this reference the factual allegations contained in paragraphs 4 through 139 as if fully set forth herein.

189.    As described herein, Defendant Zavorka's actions in actions in the killing of Kiya and conducting a no-knock entry of Ms. Zorich's home were extreme and outrageous.

190.    In undertaking these actions, Defendants Zavorka acted intentionally and/or recklessly; knew and/or should have known that his actions would result in the infliction of emotional distress upon Ms. Zorich; and acted with the sole motivation of inflicting such emotional distress.

191.    The conduct of Defendants Zavorka complained of herein was so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

192.    As a result of the conduct of Defendant Zavorka, Ms. Zorich has suffered extreme emotional distress, including suffering from one or more stress and/or anxiety-related mental health issues.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor against Defendant Zavorka for intentional infliction of emotional distress and award

her any and all compensatory damages, punitive damages, expenses, costs, and any other such

relief to which she is entitled and that this Court deems just and appropriate.

## COUNT X

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT JOHN PFANSTIEL*

**(For the Search and Seizure of the Zorich Residence)**

193.    Ms. Zorich re-alleges and incorporates by reference the factual allegations

contained in paragraphs 4 through 139 as if set forth fully herein.

194.    As described herein, Defendant Pfanstiel, while acting under color of state law

and acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and

immunities as secured by the Constitution of the United States of America, by and including but

not limited to:

      (a)    executing and/or directing the execution of an administrative search warrant through a no-knock entry, despite the fact that he knew and/or should have known that such actions were unreasonable and/or excessive; and

      (b)    authorizing and/or directing a search of areas of the home which were outside of the scope of the search warrant and in which any evidence of the alleged violations as set forth on the face of the warrant would not be reasonably expected to be found and/or in a manner which was unreasonable and/or excessive

195.    As a direct and proximate result of the conduct of Defendant Pfanstiel, Ms. Zorich

has suffered injuries and damages, including but limited to: infringements and deprivations of

her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

196.    The acts of Defendant Pfanstiel were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Pfanstiel.

197.    As a result of Defendant Pfanstiel's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Pfanstiel in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XI

### UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT JOHN PFANSTIEL

### (For the Killing of Kiya)

198.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 4 through 139 as if set forth fully herein.

199.   As described herein, Defendant Pfanstiel, while acting under color of state law and acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

(a)   executing and/or directing the execution of an administrative search warrant of Ms. Zorich's home, through no-knock entry, which resulted in the shooting and killing of Kiya, Ms. Zorich's family pet;

(b)   executing and/or authorizing the execution of an administrative search warrant for Ms. Zorich's home and with full awareness of the tactics that he would employ, including making violent and no-knock entry, would likely result in injury and/or death to the pet(s) he knew and/or should have of known to be present in the home; and

(c)   failing to develop any non-lethal plan and/or consider any non-lethal alternatives for confronting any pet(s) that he knew and/or should have known to be in the Zorich residence;

200.   As a direct and proximate result of the conduct of Defendant Pfanstiel, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

201.   The acts of Defendant Pfanstiel described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or

39

callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Pfanstiel.

202.    As a result of Defendant Pfanstiel's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Pfanstiel in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XII

### *UNLAWFUL VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS JOHN PFANSTIEL*

### (Failure to Supervise and/or Intervene)

203.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 4 through 139 as if set forth fully herein.

204.    As described herein and at all times relevant hereto, Defendant Pfanstiel, was a sworn police officer, acting under color of state law, and holding supervisory authority and responsibilities over Defendants Zavorka and Fumagalli.  As a sworn police officer acting under color of state law and supervisory officer, Defendants Pfanstiel had a duty to supervise and/or intervene to prevent other police officers from violating Ms. Zorich's constitutionally protected rights, including Defendants Rinck, Zavorka, and Fumagalli.

40

205.    As described herein, Defendants Rinck, Zavorka, and Fumagalli, while acting under color of state law and individually and in concert with others, violated Ms. Zorich's protected First, Fourth, and Fourteenth Amendment rights

206.    Defendant Pfanstiel had reasonable opportunity to intervene to prevent the actions described herein, including but not limited to by raising objections to the search warrant and the manner in which it was to be executed after review of the warrant and during the pre-operation planning phase.

207.    Despite having both a duty and opportunity to intervene to prevent the unlawful and unreasonable acts of Defendants Rinck, Zavorka, and Fumagalli, Defendant Pfanstiel failed to take any actions to prevent his fellow officers from engaging in violations of Ms. Zorich's protected rights.

208.    The acts of Defendant Pfanstiel, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendants Pfanstiel.

209.    As a result of Defendants Pfanstiel's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Pfanstiel in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

41

## COUNT XIII

***UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT MIKE FUMAGALLI***

**(For the Search and Seizure of the Zorich Residence)**

210.     Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 139 as if set forth fully herein.

211.     As described herein, Defendant Fumagalli, while acting under color of state law, acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America, by and including but not limited to:

(a)     executing and/or directing the execution of an administrative search warrant of and/or entering Ms. Zorich's home, through a no-knock entry, despite the fact that he knew and/or should have known that such actions were unreasonable and/excessive; and

(b)     authorizing, directing, and/or participating in a search of areas of the home which were outside of the scope of the search warrant and in which any evidence of the alleged violations as set forth on the face of the warrant would not be reasonably expected to be found and/or in a manner which was unreasonable and/or excessive.

212.     As a direct and proximate result of the conduct of Defendant Fumagalli, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her

safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

213.    The acts of Defendant Fumagalli were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Fumagalli.

214.    As a result of Defendant Fumagalli's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Fumagalli in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XIV

### *UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT MIKE FUMAGALLI*

### (For the Killing of Kiya)

215.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 139 as if set forth fully herein.

216.    As described herein, Defendant Fumagalli, while acting under color of state law, acting alone and in concert with others, deprived Ms. Zorich of her rights privileges and immunities as secured by the Constitution of the United States of America by and including but not limited to:

(a)  executing and/or directing the execution of an administrative search warrant of Ms. Zorich's home, through no-knock entry, which resulted in the shooting and killing of Kiya, Ms. Zorich's family pet;

(b)  executing and/or authorizing the execution of an administrative search warrant for Ms. Zorich's home and with full awareness of the tactics that he would employ, including making violent and no-knock entry, would likely result in injury and/or death to the pet(s) he knew and/or should have of known to be present in the home; and; and

(c)  failing to develop any non-lethal plan and/or consider any non-lethal alternatives for confronting any pet(s) that he knew and/or should have known to be present in the Zorich residence despite having full knowledge that animals were and/or were likely to be present.

217.   As a direct and proximate result of the conduct of Defendant Fumagalli, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

218.   The acts of Defendant Fumagalli described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Fumagalli.

219.     As a result of Defendant Fumagalli's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Fumagalli in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XV

### *UNLAWFUL VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT MIKE FUMAGALLI*

### (Failure to Supervise and/or Intervene)

220.     Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 5 through 139 as if set forth fully herein.

221.     As described herein and at all times relevant hereto, Defendant Fumagalli, was a sworn police officer, acting under color of state law, and holding supervisory authority and responsibilities over Defendants Zavorka.  As a sworn police officer acting under color of state law and as a supervisory officer, Defendant Fumagalli had a duty to supervise and/or intervene to prevent other police officers from violating Ms. Zorich's constitutionally protected rights.

222.     As described herein, Defendants Rinck, Zavorka, and Pfanstiel, while acting under color of state law and individually and in concert with others, violated Ms. Zorich's protected First, Fourth, and Fourteenth Amendment rights

223.     Defendant Fumagalli had reasonable opportunity to intervene to prevent the actions described herein, including but not limited to by raising objections to the search warrant and the manner in which it was to be executed after review of the warrant and during the pre-operation planning phase.

224.     Despite having both a duty and opportunity to intervene to prevent the unlawful and unreasonable acts of Defendants Rinck, Zavorka, and Pfanstiel, Defendant Fumagalli failed to take any actions to prevent his fellow officers from engaging in violations of Ms. Zorich's protected rights.

225.     The acts of Defendant Fumagalli, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Fumagalli.

226.     As a result of Defendant Fumagalli's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Fumagalli in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XVI

*UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ST. LOUIS COUNTY*

(***Monell*** **Liability – Official Policy**)

227.     Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 139 as if set forth fully herein.

228.     As described herein, Defendants Rinck, Zavorka, Pfanstiel, and Fumagalli, while acting under color of state law and alone and in concert with others, deprived Ms. Zorich of her rights, privileges, and immunities as secured by the Constitution of the United States of America through the manner in which a search warrant was obtained and executed for Ms. Zorich's residence; in authorizing and directing a tactical response unit to execute the search warrant; in the unlawful seizure of Kiya, Ms. Zorich's companion animal; by failing to intervene and stop other officers from violating Ms. Zorich's rights; and/or by directing and/or acquiescing to violations of Ms. Zorich's rights by subordinates under their supervisory control.

229.     The misconduct of the individually-named Defendant officers of the St. Louis County Police Department, as described herein, was objectively unreasonable and undertaken with malice, willfulness, and/or reckless indifference to the rights of Ms. Zorich.

230.     The misconduct of the individually-named Defendants of the St. Louis County Police Department, as described herein, was authorized by and undertaken pursuant to an officially stated and promulgated policy of Defendant St. Louis County in that:

(a)     It is the stated and official policy of Defendant St. Louis County that the Tactical Response Unit serves all search warrants, without regard to the nature of the allegations which serve as the underlying basis for the warrant and without conducting any fact-specific analysis and/or regard for the threat level or lack thereof posed in serving the warrant.

(b)     Defendant St. Louis County is charged with certain duties, including but not limited to the adoption and promulgation of rules, policies, procedures, regulations, general orders, and special orders governing the operation of the St. Louis County Police Department.

(c)     On information and belief, Defendant St. Louis County employs and/or has designated one or more of its employees as policymaker(s) in connection with police policies, practices, and training, including but not limited to the lawful obtainment and reasonable execution of search warrants and the appropriate and reasonable use of the Tactical Response Unit.

(d)     At all times relevant to this Complaint, the individually-named Defendants were acting under the direction and/or control of the policymaker(s) of Defendant St. Louis County.

(e)     At all times relevant to this Complaint, and while acting under the color of state law and pursuant to his/her policymaking authority, the designated and authorized policymaker(s) of Defendant St. Louis County did knowingly, maliciously, recklessly, with deliberate indifference to, in bad faith, or with callous disregard, promulgated and authorized policies that were violative of the well-established rights of the citizenry and Plaintiff as well as failed to instruct, train, discipline, supervise, and control the individually-named Defendants in proper and lawful use of state authority.

231.    The serious harms incurred by Ms. Zorich were the direct consequence of the official and stated policies of Defendant St. Louis County.

48

232.     The actions complained of herein were investigated by and subsequently found to be in compliance with the policies and practices of Defendant St. Louis County.

233.     As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Zorich suffered damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

234.     As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Zorich has suffered and continues to suffer injury and emotional distress.

235.     The acts of Defendant St. Louis County, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant St. Louis County.

236.     As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant St. Louis County and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XVII

### UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ST. LOUIS COUNTY

### (*Monell* Liability – Unlawful Practice or Custom)

49

237.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 139 as if set forth fully herein.

238.    As described herein, Defendants Rinck, Zavorka, Pfanstiel, Higginbotham, and Fumagalli, while acting under color of state law and in concert with others, deprived Ms. Zorich of her rights, privileges, and immunities as secured by the Constitution of the United States of America through the manner in which a search warrant was obtained and executed for Ms. Zorich's residence; in authorizing and directing a tactical response unit to execute the search warrant; in the unlawful seizure of Kiya, Ms. Zorich's companion animal, by shooting and killing Kiya; by failing to intervene and stop other officers from violating Ms. Zorich's rights; and/or by directing and/or acquiescing to violations of Ms. Zorich's rights by subordinates under Defendant St. Louis County's supervisory control.

239.    The misconduct of the individually-named Defendant officers of the St. Louis County Police Department, as described herein, was objectively unreasonable and undertaken with malice, willfulness, and/or reckless indifference to the rights of Ms. Zorich.

240.    The misconduct of the individually-named Defendants of the St. Louis County Police Department, as described herein, was authorized by and undertaken pursuant to a practice and custom that what so widespread and well-settled as to constitute a standard operating procedure of Defendant St. Louis County in that:

(a)    It is the standard operating practice and procedure of Defendant St. Louis County to use the Tactical Response Unit to serve all search warrants, including administrative warrants, Municipal Court warrants, and/or warrants for violations of property and/or housing codes, without regard to the nature of the allegations which serve as the underlying basis for the

50

warrant and without conducting any fact-specific analysis and/or regard for the threat level or lack thereof posed in serving the warrant.

(b)    This practice and procedure was so widespread and well-settled that that the policymaker(s) of Defendant St. Louis County knew and/or should have known of it.

(c)    Defendant St. Louis County openly acknowledges and has ratified the existence of this practice and procedure, stating on its website that the Tactical Response Unit "executes all search warrants issued in St. Louis County."

241.    The serious harms incurred by Ms. Zorich were the direct consequence of the official practice and custom of Defendant St. Louis County.

242.    The actions complained of herein were investigated by and subsequently found to be in compliance with the policies, practices, and customs of Defendant St. Louis County.

243.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Zorich suffered damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

244.    As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Zorich has suffered and continues to suffer injury and emotional distress.

245.    The acts of Defendant St. Louis County, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant St. Louis County.

246.    As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant St. Louis County, and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XVIII

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ST. LOUIS COUNTY*

### (*Monell* Liability – Policy of Failure to Train)

247.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 134 as if set forth fully herein.

248.     As described herein, Defendants Rinck, Zavorka, Pfanstiel, Higginbotham, and Fumagalli, while acting under color of state law and in concert with others, deprived Ms. Zorich of her rights, privileges, and immunities as secured by the Constitution of the United States of America in the unlawful seizure of Kiya, Ms. Zorich's companion animal, by shooting and killing her; by failing to intervene and stop other officers from violating Ms. Zorich's rights; and/or by directing and/or acquiescing to violations of Ms. Zorich's rights by subordinates under his supervisory control.

249.    Defendant St. Louis County's training program regarding police interactions with canines and other family pets was non-existent, inadequate and/or failed to provide Defendant St.

52

Louis County's officers and employees the necessary knowledge and skills to carry out their duties.

250.     Defendant St. Louis County knew and/or should have known that its officers encounter canines and family pets on a routine and recurring basis in the performance of their duties and that a significant portion of the citizenry of St. Louis County own canines and other family pets.

251.     In failing to properly train its officers and employees regarding encounters with canines and family pets, Defendant St. Louis County acted with deliberate indifference to the fact that its failure to provide such training would result in the killings of family pets and thereby deprivations of the constitutional rights of the citizenry, including Plaintiff.

252.     This indifference to training has resulted in officers and employees mishandling encounters with canines and family pets in the past.

253.     As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Zorich suffered damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

254.     As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Zorich has suffered and continues to suffer injury and emotional distress.

255.     The acts of Defendant St. Louis County, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant St. Louis County.

256.    As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant St. Louis County, and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT XIX

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ST. LOUIS COUNTY*

**(*Monell* Liability – Policy of Failure to Train, Supervise, and/or Discipline)**

257.    Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 139 as if set forth fully herein.

258.    As described herein, Defendants Rinck, while acting under color of state law and in concert with others, deprived Ms. Zorich of her rights, privileges, and immunities as secured by the Constitution of the United States of America in the unlawful seizure of Kiya, Ms. Zorich's companion animal, by shooting and killing her; by failing to intervene and stop other officers from violating Ms. Zorich's rights; and/or by directing and/or acquiescing to violations of Ms. Zorich's rights by subordinates under his supervisory control.

259.    Defendant St. Louis County knew and/or should have known that Defendant Rinck had a history and ongoing pattern and practice of acting in a manner that was violative of the constitutional rights of the citizens of St. Louis County, misused and abused his position as a

54

St. Louis County Police Officer assigned to the problem properties unit, conducted unconstitutional and unreasonable searches, and had unconstitutionally and unreasonably forced his way into a residence, threatened to shoot a citizen, and threatened to shoot a family pet on at least one prior occasion.

260.    Despite knowledge of Defendant Rinck's history and ongoing pattern and practices of acting in an unreasonable and/or unconstitutional manner, Defendant St. Louis County training and/or disciplinary policies were inadequate to prevent Defendant Rinck from continuing to engage in actions which violated the constitutional protections afforded to the citizens of St. Louis County, including Ms. Zorich.

261.    Defendant St. Louis County's acts and failures to act with respect to Defendant Rinck's conduct was due to deliberate indifference and was so closely related to Defendant Rinck's violations of Ms. Zorich's constitutional rights as to be a moving factor..

262.    As a direct and proximate consequence of the acts of Defendant St. Louis County, Ms. Zorich suffered damages in the form of, *inter alia*, deprivation of her constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

263.    As the result of the actions of the individually-named Defendants and Defendant St. Louis County, Ms. Zorich has suffered and continues to suffer injury and emotional distress.

264.    The acts of Defendant St. Louis County, as described herein, were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant St. Louis County.

265.   As a result of Defendant St. Louis County's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant St. Louis County, and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

Respectfully Submitted

*/s/ Jerome J. Dobson*
Jerome J. Dobson, #33215
Nicole A. Matlock, #66894MO
Dobson, Goldberg, Berns & Rich, LLP
5017 Washington Place, Third Floor
St. Louis, MO 63108
Telephone: (314) 621-8363
Fax: (314) 621-8366
jdobson@dobsongoldberg.com
nmatlock@dobsongoldberg.com

*/s/ Daniel J. Kolde*
Daniel J. Kolde, #MO64965
230 S. Bemiston Ave., Suite 1420
St. Louis, MO 63105
Telephone: (636) 675-5383
daniel.kolde.law@gmail.com

*Attorneys for Plaintiff*