# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

Daniel J. Kolde
906 Olive St.
St. Louis, Missouri 63101

PRELIMINARY EXPERT REPORT

RE: ANGELA ZORICH v. COREY ZAVORKA, ET AL.
Cause number 4:15-CV-00871 CEJ

**NOTE: THIS REPORT IS PRELIMINARY. FURTHER DETAILED OPINION TO FOLLOW AS ADDITIONAL INFORMATION IS PRESENTED. EXPERT OPINIONS ARE NOT LIMITED TO THE OPINIONS PRESENTED BELOW. I EXPLICITLY RESEVE THE RIGHT TO AMEND, EXPAND, AMPLIFY OR CLARIFY THESE OPINIONS IF MORE DATA IS PESENTED AND AFTER FURTHER DETAILED ANALYSIS.**

8 July 2016

I, James W. Crosby, am an adult over the age of 18 years and would be competent to testify if called as a witness in this case. I have been retained in the case of Zorich v. Zavorka to provide expert opinion on the case regarding the use of deadly force against a companion animal, specifically a domestic dog known as Kiya, belonging to Angela Zorich and her family.

To summarize my qualifications regarding forming opinions about this case: I am a court-recognized expert on dog behavior, dog aggression, and dog bite investigation in a variety of municipalities, states, and in the United States District Court, based on my extensive experience and training. I am a Certified Behavior Consultant-Canine-Knowledge Assessed. I have been working with aggressive and dangerous dogs for over ten years. I actively provide training for police departments and animal control agencies regarding dangerous dogs, dog aggression, use of force in canine encounters and the investigation of serious and fatal dog attacks on human victims. Agencies that I have instructed have included the Florida Animal Control Association, the Alabama Animal Control Association, the National Animal Control Association, the Alberta Animal Control and Bylaw Officers' Association, the London Metropolitan Police and their Status Dog Unit, and other public and private conferences. I have directly investigated over 20 human fatalities by dogs with on-scene investigations, several of which have resulted in successful criminal prosecution. When unable to respond personally I have consulted on investigation of human fatalities in the United States, the United Kingdom, and India wherein I have rendered opinions. As a result of these investigations I have performed hands-on direct behavioral evaluations of approximately forty (40) dogs that have killed human victims. My



# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

sworn reports and testimony have been accepted as expert materials in many states and in the Crown Court of the United Kingdom.

As to training received regarding animal behavior, I have attended many seminars and training sessions addressing canine behavior. These are listed in the attached CV and include, but are not limited to, advanced canine behavior training, obedience instructor training, dog behavior evaluation, Bite Prevention for Law Enforcement Officers, and course work taken through the University of Florida on Animal Crime Scenes/Clandestine Grave Investigation and Bite Mark Analysis.

I am currently admitted as a graduate student at the University of Florida in the College of Veterinary Medicine, obtaining my Master's Degree in Veterinary Forensics. As such I have so far completed coursework in Forensic Animal Behavior Analysis, Interpersonal Violence and Animal Abuse, Veterinary Forensic Pathology, Veterinary Forensic Osteology, Animal Law, Scientific and Legal Principles of Evidence, and Forensic Crime Scene Analysis. I have taught canine behavior and assessing behavior problems and aggression across the United States, England, Italy, and Canada.

I am currently serving as the Chief of Animal Care and Protective Services for the City of Jacksonville, Florida. My current duties include, but are not limited to, overall management and oversight of Jacksonville Animal Care and Protective Services (ACPS); supervision of all Animal Control Enforcement personnel; oversight and approval of criminal investigations; oversight of the Veterinary Department of ACPS; oversight and supervision of the behavior section of ACPS; sitting as Special Hearing Officer for any and all appeals of Dangerous Dog declarations by the City of Jacksonville; interaction with other City divisions and outside agencies, civil and Law Enforcement; accountability and responsibility for the lawful and proper operation of the agency, and other duties as may arise. I am a Certified Animal Control Officer in the State of Florida and I served as the Animal Control Division Manager for Bay County, Florida, from February 2008 to September 2010. During my tenure at Bay County Animal Control my duties included daily shelter management, assuring the safe handling and humane treatment of animals in the care of Bay County Animal Control, investigating complaints of animal neglect and cruelty, overseeing and assisting in animal rescue and capture, response to calls to assist police in animal related calls, and performing investigations and making findings of fact regarding the declaration of Dangerous Dogs under Florida Statute. My training and experience also includes certification, training and experience in humane euthanasia of animals and the legal restrictions on methods and reasons for such euthanasia. I have investigated many complaints about dogs and dog behavior

My agency is a member of the Florida Animal Control Officers' Association. I have taught portions of the Florida Animal Control Association curriculum for the certification of Animal Control Officers' including perception of threat and use of legal force in animal cases. I was a member of the Board of Directors of the Florida Animal Control Association and, as such, was privy to the discussions regarding establishment of Standards regarding the curriculum. I continue to provide training to members of the Florida Animal Control Association and other agencies. I am a Charter Member of the International Veterinary Forensic Science Association.

# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

I served for a period of time in New Orleans, Louisiana, after hurricanes Katrina and Rita at an emergency response shelter. I was responsible for the safe management and treatment of dogs that were identified as "aggressive" by field capture teams. I also performed emergency field capture of dogs, both compliant and "aggressive". I served as co-commander of the emergency shelter. My safe handling and management techniques were incorporated into both the immediate rescue and recovery mission in New Orleans and later into the Louisiana State Disaster Response procedures. After the emergency response I returned to Louisiana and taught at the Veterinary School of Louisiana State University on safe handling and evaluation of "aggressive" and fractious dogs in emergency response. I also instructed and advised the St. Tammany Parish Animal Control Department and several surrounding agencies in a seminar on aggressive and dangerous dog handling.

I served as a Police Officer with the Jacksonville Sheriff's Office from 1977 to 1999, performing twenty-two years of active service. During that period of time I served as a Patrolman, a Sergeant, and a Lieutenant. My duties as a Patrolman included patrol duties, emergency response, and investigations.

As a Sergeant, my duties involved day to day on-scene supervision of call response, major calls and investigations, allegations of misconduct, critical incident response and accountability, and investigating complaints regarding use of force by my officers. Some of these investigations did result in administering or recommending disciplinary action against officers for violating Departmental guidelines and proper procedures for said use of force.

As a Lieutenant my immediate span of control as a Watch Commander ranged up to four (4) Sergeants and forty (40) officers, plus officers in training, at any one time. I served on the Firearms Review Board for the Jacksonville Sheriff's Office, the designated Board that determined whether a discharge of firearms case was justified and reasonable under Florida Statute and Department guidelines. I have attached a CV to this report detailing my work experience.

As both a Sergeant and a Lieutenant I was trained and designated as a Field Training Officer Supervisor, and had day to day responsibility to oversee the training of new officers and new supervisors in Department procedures, job tasks, and supervisory issues including the use of force and investigating cases thereof. During my career as an active Law Enforcement Officer

LIST OF PUBLICATIONS AUTHORED BY JAMES W. CROSBY

Canine Aggression Blog-online at canineaggression.blogspot.com

Public Service announcements broadcast on WKGC Radio, Panama City, Florida, as part of a recurring program giving pet advice from 2008 through 2009.

# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

Chapters "Investigating Serious and Fatal Dog Attacks" and "Bite Mark Analysis and Interpretation" for the book Dog Aggression, edited by Mills and Westgarth, to be published by the University of Lincoln Press, Lincoln, Lincolnshire, England.

"The Specific Use of Evidence in the Investigation of Dog Bite Related Human Fatalities", submitted in partial fulfillment of the Degree of Master of Science to the University of Florida.

COURT CASES JAMES W. CROSBY HAS TESTIFIED IN OR PROVIDED EXPERT OPINION IN DURING THE PAST FOUR (4) YEARS:

2012
| | |
|---|---|
| Uhring v. the City of McKeesport | Pennsylvania |
| Orazietti v Darryl's On The Water | Florida |
| Westbrook v Jacksonville Animal Care and Protective Services | Florida |
| New Jersey Aid for Animals v The City of Philadelphia Animal Care and Control | Pennsylvania |

2013
| | |
|---|---|
| Muntean v Morales | Washington |
| Pierre v Gamboa | California |
| Sanders vs. City of Salem, MO | Missouri |
| Branson v. The City of Commerce City, CO. | Colorado |

2014
| | |
|---|---|
| Criscuolo v. The City of Moses Lake | Washington |
| Gonzalez v. The City of Pico Rivera and the County of Los Angeles | California |
| Russel and Hope Lane v. The city of Round Rock, Texas and the Round Rock Police Department | Texas |

2015
| | |
|---|---|
| Moore v. The City of Erie, CO | Colorado |
| Fisher v. Adams County, CO | Colorado |
| Faibre v. Murphy | Louisiana |

2016
| | |
|---|---|
| Bradley Ray Beck Jr. v. Ryan Smith and Spokane County Sheriff's Department | Washington |
| R v McGarrity & Dickson [2016] North Tyneside MC, (unreported) | UK Magistrates' Court |

# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

---

These cases include cases in which I have appeared both for and against the owners of dogs.

MATERIAL REVIEWED:

In forming my preliminary opinions about this case, I have reviewed the following documents and photographs provided by counsel:

(16) color digital photographs that appear to be of the exterior of the residence at 3036 Caprock Court. All photos in this group are date imprinted as taken 4/25/14.

(42) color digital photographs that appear to be the exterior and interior of the residence at 3036 Caprock Court. These photos are all date imprinted at being taken 4/29/14.

Digital copies of documents with the following titles:
    Application for Search Warrant.
    St. Louis County Police Department Investigative Report #14-23240.
    St. Louis Police Department General Order 07-53, Search and Seizure Procedures.
    St. Louis Police Department Investigative Report 14-23211-Original.
    Tactical Operations Search Warrant Log
    St. Louis Police Department Special Order 11-340, dated 21 November 2011
    Tactical Operations Unit Procedure 14-34 dated 06/01/14
    Tactical Operations Unit Procedure 14-34 dated 03/01/94
    Deposition excerpt titled "Zavorka-re planning for presence of dog on property"
    Zavorka, C. (Deposition) 29 January 2016
    Zorich, transcript of deposition, 26 January 2016

SUMMARY OF ALLEGATIONS AT THIS TIME:

According to the summary of facts, on Tuesday, 29 April 2014, members of the St. Louis County Police Department, specifically members of the St. Louis County Police Department Tactical Operations Unit, accompanied by a St. Louis County Police Problem Properties Unit Officer, served a search warrant at the home of Ms. Zorich. Said search warrant was issued under pretense of a municipal code violation to permit the search of the Zorich residence for the purpose of determining whether the natural gas utility was active.

During the dynamic, no-knock entry of the Zorich home for the execution of the warrant, allegedly to check for active natural gas utility service and possible but unspecified municipal code violations, officer(s) of the St. Louis County Police Department Tactical Operations Unit shot the Zorich family dog Kiya multiple times. Said shooting did, according to the complaint, occur within seconds of the Tactical Unit's dynamic entry, an entry made by forcible use of a

# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

battering ram to break open the front door.

ANALYSIS OF THE PHYSICAL EVIDENCE

An examination of the various photographs provided show a number of details.

In the batch of photos dated by imprint 4/25/14, photo 003 is an exterior photo that shows the gas meter, apparently for the Caprock Court residence. The entire meter structure is plainly visible and the dials for monitoring gas usage are visible.

Photo 004 shows what appears to be a seal attached to the meter that appears undamaged.

Photo 007 shows an exterior view of a porch that is openly visible and has apparent structural defects clearly visible from outside the residence. There is a dog plainly visible under the porch.

Photo 016 shows what appears to be the same dog, clearly tethered, barking. In the photo there is clearly a dog house, a bowl apparently for food, a bucket apparently for water, and the porch itself clearly provides shade and some shelter from the elements.

In the batch of phots dated by imprint 4/29/14, photo 007 shows what appears to be a fully wired smoke detector unsecured to the ceiling.

Photo 011 appears to show a smoke detector missing a plastic cover.

Photo 015 and 016 appear to show an electrical outlet in an unfinished space attached to a wooden upright stud.

Photo 028 appears to show an uncovered electrical outlet.

Photo 029 appears to show a broken window that would have been visible from outside the home.

Photo 032 appears to show a partially painted electrical plug.

Photo 035 appears to show a torn screen, as taken from outside the structure and plainly visible.

Photo 036 appears to show a defect in the structure exterior siding, plainly visible from the exterior of the structure.

OPINIONS:

# James W. Crosby
1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

1) The warrant issued was to inspect the residence described in the affidavit for working natural gas utility and other, non-specified and vague allegation of municipal code violations. The non-connection of the natural gas utility had already been established by both a complainant employed by the utility company and by exterior examination of the residence and curtilage by the Problem Properties Officer. The exterior examination of the gas meter, as documented by the exterior photographs, showed clearly that the gas was indeed turned off. Based on my extensive experience and training, in my professional opinion there was no credible or reasonable justification for entering the property to determine whether the natural gas utility was active.

2) Search warrants, in my professional opinion, must be issued for the purpose of seeking evidence of a particular crime. Allegations of generic crimes, such as vague assertions of possible municipal code violations, are not specific. Based on my experience as a certified Police Officer, Supervisor, and Commanding Officer, I would have prohibited one of my officers from seeking a search warrant on such vague grounds as potentially constitutionally invalid and unlawful.

3) The warrant issued was only for an alleged violation of municipal housing code. Based on my experience and training, and on the written guidelines provided by the St. Louis County Police Department, the forcible, no-notice (no-knock) entry of the residence was objectively unjustified for such a minor infraction, specifically, but not limited to the fact that there was no exigency involved: no member of the public was at risk, no member of the occupying Zorich family was at risk, and there was no potential evidence of gas utility shutoff that could have reasonably been destroyed had the officers proceeded calmly and without force.

4) Further, these was not documented evidence in any photograph, before or after the service of the warrant, that reasonably could have been destroyed, hidden, or otherwise removed justifying an immediate and dynamic entry.

5) No credible evidence indicates that there were any actively wanted, dangerous persons located within the home justifying a dynamic, forceful entry for officer safety reasons.

6) The dynamic and forcible service of the warrant without notice or warning did in reality create a real and objective danger to the occupants of the home, the dog known to be residing at the residence, and to the Police Officers as evidenced by the discharge of the Police firearm within the residence and in close proximity to multiple persons, including a very young child. This creation of a dangerous situation was, in my professional opinion, objectively reckless and unnecessary.

7) The service of the warrant by the St. Louis County Police Tactical Unit without following the policy of the St. Louis County Police Department regarding adequate monitoring of, surveillance of, and intelligence gathering about the target property before service, without immediate clear and present danger to the public or others, was blatantly reckless and not justified by any exigent circumstances. Such unprepared service of the warrant did, in my professional opinion, directly and recklessly endanger the residents and their pet, the neighbors, and the officers themselves without reasonable and objective justification.

8) Prior information in the possession of the St. Louis Police Department Tactical Unit, documented in the exterior photograph and directly known by the Problem Properties Officer, was that there was at least one dog present, or likely to be present, in the home. No plan was made for the adequate and safe containment or handling of said dog during warrant service,

# James W. Crosby

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

nor were any less-lethal or non-lethal means even attempted to control or protect the dog or the officers from the dog. This was, in my professional opinion, objectively unreasonable and was in direct conflict with current, widely known and accepted best practices within the field of police encounters with dogs.
9) According to all involved, the deployment of deadly force within the Zorich home was nearly immediate. The best timeline established shows that there was insufficient time between the entry and the discharge of the firearm for the officer to have even tried to make a reasonable and necessary evaluation of the situation to assess the need for deadly force deployment against the dog. This immediate response without proper evaluation and consideration was reckless and indicates a failure to properly assess the situation.
10) Thus, in my professional opinion, the use of immediate deadly force against the domestic dog Kiya, within the confines of the Zorich home was not a reasonable response to a valid and objectively viable threat. The deployment of deadly force was instead reckless and unreasonable, and departed from reasonable and well-recognized best professional practices.


OTHER DOCUMENTS AND PUBLICATIONS CONSULTED DURING THIS CASE:

1. Sacks JJ, Sinclair L, Gilchrist J, Golab GC, Lockwood R. Breeds of dogs involved in fatal human attacks in the United States between 1979 and 1998. JAVMA 2000; 217:836-840.
2. Quinlan KP, Sacks JJ. Hospitalizations for Dog Bite Injuries [letter] JAMA 1999; 281:232-233.
3. Beaver, B. et al, AVMA Task Force on Canine Aggression and Human-Canine Interactions. A community approach to dog bite prevention. JAVMA 2001; 218: 1732-1749.
4. Sacks JJ, Kresnow M, Houston B. Dog bites: how big a problem? Injury Prevention 1996; 2:52-4.
5. Sacks JJ, Lockwood R, Hornreich J, Sattin RW. Fatal dog attacks, 1989-1994. Pediatrics 1996; 97:891-5.
6. Delise, Karen, Fatal Dog Attacks: The Stories Behind the Statistics. Anubis Press, Manorville NY, 2002
7. Newman, Jennifer, Human-directed dog aggression; A systematic review, University of Liverpool (Thesis) June, 2012
8. Pets Advisor Special Report "Gunned Down: Why Are So Many Dogs Being Shot By Police", petadvisor.com, May, 2013
9. Maddox, Gary P. PhD "Officer Safety Corner: Dogs and the Police Response: A Guide for Safe, Successful, and Humane Encounters", Police Chief Magazine, July 2014.
10. Bathhurst, Cynthia et al, The Problem of Dog Related Incidents and Encounters, US Department of Justice Publication, Community Oriented Policing Services, 2011
11. Los Angeles Police Department Use of Force Tactics Directive, Directive Number 7, "Dog Encounters" July, 2009
12. The Use of Electro-Muscular Disruptive Devices or "TASER® Devices" on Animals (July 26, 2010) American Veterinary Medical Association.

# James W. Crosby

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

I explicitly reserve the right and ability to amend, modify, or expand this opinion based on the introduction of additional evidence or items including not in my possession. I also reserve the right to research and examine other materials not listed above to assist in establishing further opinions as such may become known or necessary.

Respectfully submitted,

*[signature]*

James W. Crosby, CBCC-KA, Consultant