UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA ZORICH, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ST. LOUIS COUNTY, et al., )<br>)<br>    Defendants. ) | 4:17-cv-1522 PLC |

**PLAINTIFF ANGELA ZORICH'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO *DAUBERT***

COMES NOW, Plaintiff Angela Zorich, and, for her Memorandum in Opposition to Defendants' Motion to Exclude Expert Testimony Pursuant to *Daubert* states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 29, 2014, a heavily armed, nine-person tactical squad of the St. Louis County Police Department made a dynamic, no-knock entry into Plaintiff's home to execute a search warrant obtained by Defendant Robert Rinck for minor violations of a municipal property ordinance and housing code. Immediately upon entry into the home, and without having considered any non-lethal alternatives for interacting with any of Plaintiff's pets, Defendant Zavorka fired four shots into Kiya, Plaintiff's family dog, and killed her in front of Plaintiff and her family. As a result of these events, Plaintiff has filed this present action against Defendants Rinck, Zavoraka, Fumagalli, and Pfanstiel for violations of her protected constitutional rights as well as for claims pursuant to Missouri common law, and for claims against St. Louis County itself, pursuant to theories of *Monnell* liability.

In support of her claim, Plaintiff has retained James W. Crosby, a former law enforcement officer with the retired rank of lieutenant and a currently recognized leading expert on police-canine encounters, to testify for her as an expert witness in this case. Pursuant to this Court's Scheduling Order and Fed. R. Civ. P. 26, Plaintiff duly and timely identified Lt. Crosby, as required by Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). *See Doc. # 29, Ex. A*. On or about March 30, 2018, Defendants conducted a deposition of Lt. Crosby in this matter. *See Doc. # 29, Ex. B*.

Presently pending before this Court is Defendant's Motion to Exclude Expert Testimony Pursuant to *Daubert*. In that Motion, Defendants assert several reasons for which they believe that Lt. Crosby should be denied the opportunity to testify in this matter. However, Defendants grounds for seeking to exclude Lt. Crosby are meritless and display a fundamental lack of understanding regarding Fed R. Evid. 702 and the *Daubert* standard. Most egregiously, Defendants have attempted. to introduce the testimony of a previously undisclosed rebuttal expert. *Doc. # 29, Affidavit Speight*.[1] Additionally, Defendants' attempts to challenge qualifications by mischaracterizing both the issues of this matter and Lt. Crosby's experience and testimony are equally baseless. Finally, Defendants' contention that Lt. Crosby's opinions offer impermissible legal conclusions are likewise meritless and are offered without specific reference to any alleged improper testimony or legal citation.

## STANDARD OF REVIEW

Expert testimony is admissible if it is relevant and reliable. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)(extending the *Daubert* standard to all expert testimony and not simply that which is considered scientific). As provided by Fed. R. Evid. 702, expert opinions are relevant if they

---

[1] Plaintiff has filed a Motion to Strike the Affidavit and Testimony of Marcellus Speight contemporaneously with this present responsive pleading.

"assist the trier of fact to understand the evidence or determine a fact in issue." Further, the Eighth Circuit has adopted a three-part test to screen potential expert witnesses under Fed. R. Evid. 702: (1) the evidence "must be useful to the finder of fact in deciding the ultimate issue of fact"; (2) "the proposed witness must be qualified to assist the finder of fact"; and (3) "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Johnson v. Mead Johnson & Co.*, 754 Fed.3d 557 (8th Cir. 2014)(citation omitted).

In addition, Rule 702 is properly construed as a rule of inclusion rather than one of exclusion, and "the rejection of expert testimony is the exception rather than the rule." *Fed. R. Evid. 702, Advisory Committee Note*. While the Eighth Circuit courts "adhere to [the] discretionary standard for review of the district court's Rule 702 gatekeeping decision, cases are legion that, correctly, under Daubert, call for the liberal admission of expert testimony." *Johnson*, 754 Fed.3d at 562 (citing *United States v. Finch*, 630 Fed.3d 1057, 1062 (8th Cir.2011)(holding that doubts about the usefulness of expert testimony should be resolved in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.*, 447 Fed.3d 1096, 1100 (8th Cir.2006)(holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods.*, Inc., 270 Fed.3d 681, 686 (8th Cir.2001)(Rule 702 "clearly is one of admissibility rather than exclusion"); *Wood v. Minn. Mining & Mfg. Co.*, 112 Fed.3d 306, 309 (8th Cir.1997)(holding that exclusion of expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury"). Further, "district courts are admonished not to weigh or assess the correctness of competing expert opinions." *Id.* (citation omitted). Hence, "[a]s long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the

adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id* (citing *Daubert*, 509 U.S. at 596).

## LEGAL ARGUMENT

### A. Lt. Crosby is Qualified to Serve as an Expert Witness in this Matter.

"Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." *U.S. v. Solorio-Tafolla*, 324 Fed.3d 964 (8th Cir. 2003)(quoting *United States v. Molina*, 172 Fed.3d 1048, 1056 (8th Cir.1999)). Further, as repeatedly recognized by the federal courts, law enforcement officers can be qualified to give expert testimony based on their special knowledge, skill, training, and experiences. *See Id.*; *Schmidt v. City of Bella Villa*, 557 Fed. 3d 564 (8th Cir. 2009). Additionally, expert testimony on police practices and policies is generally admissible in § 1983 cases. *See S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 Fed.3d 838, 841 (8th Cir. 2003)("industry practice or standards may often be relevant . . . and expert or fact testimony on what these are is often admissible"). Finally, the use of expert witness testimony can be particularly instructive and useful in matters involving the killing of canines by police officers as "[t]he principles surrounding use of force by a police officer and the tactics and methods for evaluating and capturing a dog are matters of specialized knowledge rather than common knowledge and experience." *Branson v. Price*, 13-cv-03090-REB-NYW, *Doc. # 87*, at *6 (D. Colo. Sept. 24, 2015)(denying a defendant's motion to exclude the expert testimony of Lt. Crosby and two other proposed experts).

As an initial matter, Lt. Crosby is more than qualified to assist the jury in this matter. *See Doc. # 29*, *Exhibit A*. Lt. Crosby has over 22 years of active law enforcement experience, both

4

patrol and supervisory and rising from the rank of patrolman to a retiring rank of lieutenant.. *See Doc. # 29, Exhibits A* at 1-3*, B* at 34-36. He provides training to multiple law enforcement agencies across the country regarding dangerous dog procedures, perception of threat, and use of legal force on animals. *Doc. # 29, Exhibit A* at 1-3. He has served as the Chief of Animal Care and Protective Services for the City of Jacksonville, Florida. *Id.* at 2. He publishes a blog on canine aggression and has served as an expert in approximately seventeen cases across the country, including cases involving the shooting of a canine by law enforcement. *Id.* at 1-4; *See also Branson, 13-cv-03090-REB-NYW, Doc. # 87*. In preparing his opinions in this matter, Lt. Crosby has relied on a number of documents and materials, including St. Louis County policies, police reports, photographs, and deposition testimony. *Doc. # 29, Ex. A* at 5. He also has reviewed numerous publications, including publications involving the issue of use of force by law enforcement against canines and family pets. *Id.* at 6. Thus, Lt. Crosby is qualified to testify as an expert witness in this case, has extensive knowledge that will be of assistance to the jury, and has formulated his opinions based upon the reliable application of his principles and methods to the facts of this matter

In challenging Lt. Crosby's qualifications, Defendants mischaracterize the intended nature of his testimony. With respect to his Opinions Nos. 1 - 2, Defendants object that Lt. Crosby has not cited to any publications which he reviewed regarding administrative search warrants. *Doc. # 30* at 3. Further, Defendants contend that Lt. Crosby is unqualified as he "cannot opine on administrative search warrants as understood by Missouri law." *Id.* at 3. However, as discussed above, Lt. Crosby's extensive law enforcement training and career is more than sufficient to qualify him as an expert under Rule 702. Moreover, Defendants' arguments regarding Lt. Crosby's lack of knowledge of Missouri law are meritless and trivial as

Plaintiff has not pleaded any claims for violations of her rights under the state constitution and, thus, any lack of knowledge of Missouri law as it may pertain to administrative search warrants has no bearing on Lt. Crosby's ability to provide expert testimony in this matter. Then, with respect to his Opinions Nos. 3 - 6, Defendants contend that Lt. Crosby is unqualified, as he never served as a code enforcement officer nor is he familiar with the training provided to the TAC team. These arguments are equally without merit. During his career, Lt. Crosby was involved with Jacksonville, Florida's "DART team" which is a "cooperative effort between the Jacksonville Sheriff's Office, code enforcement, animal control, property inspectors and so forth, that do address problem properties." *Id.* at 38-39. He has also executed and supervised the execution of search warrants "many times," more in fact than he could estimate. *Crosby Depo.* at pp. 37-38. Further, Lt. Crosby was a watch commander for approximately five (5) years with experience in "the day-to-day management of the officers and supervisors under [his] command" and "investigation of other alleged misconduct and misdeeds by the officers under [his] command." *Id.* at p. 36. Finally, specific knowledge of code enforcement or TAC training is not required for Lt. Crosby to formulate an expert opinion based upon what occurred at Plaintiff's residence between April 25 and April 29, 2014. While such matters might be proper for cross-examination, they are not proper grounds for exclusion under *Daubert*.

Moreover, Defendants' challenges to Lt. Crosby's qualifications come from impermissible and untimely rebuttal testimony. In attempting to challenge Lt. Crosby's Opinions Nos. 1 - 2 and Nos. 3 - 6, Defendants now for the first time attempt to introduce the rebuttal testimony of Marcellus Speight in support of their motion. *Doc. # 29, AfFed. M. Speight; Doc. # 30* at 4, 7-8. This Court should reject this newly disclosed "expert" and his testimony for two reasons. First, Defendants' attempt to include the testimony of a previously undisclosed rebuttal

6

expert is untimely, prohibited under Fed. R. Civ. P. 26(a)(2)(B), and violative of both the letter and spirit of the federal discovery rules which are designed to minimize surprise and prohibit this type of ambush litigation.[2] Second, even if this Court allows Mr. Speight's affidavit, Mr. Speight's proffered testimony represents mere disagreements about conclusions, which might be proper material for cross-examination but are improper for purposes of a *Daubert* challenge. *See Johnson*, 754 Fed.3d at 562 (district courts are admonished not to weigh or assess the correctness of competing expert opinions.").

Finally, contrary to Defendants suggestions, Lt. Crosby's knowledge, skill, training, and experience are a "close fit" with the matters at issue in this litigation. In challenging Lt. Crosby's expertise with respect to his Opinions Nos. 1 - 2 and Nos. 3 - 6 Defendants contend that Lt. Crosby's law enforcement experience, which they concede would otherwise qualify him to serve as an expert witness, is insufficient as his previous experience is not a "close fit" with the matters at issue in this litigation. In making this claim, Defendants rely almost exclusively upon *Schmidt v. City of Bella Villa*, 557 Fed.3d 564, 571 (8th Cir. 2009).[3] However, *Schmidt* actually supports Lt. Crosby's credentials and value as an expert witness. In *Schmidt*, the plaintiff brought a lawsuit alleging that a law enforcement officer violated her Fourth and Fourteenth Amendment rights by subjecting her to an unlawful, partial strip-search. *Id.* at 567-68. The plaintiff attempted

---

[2] Plaintiff has filed a Motion to Strike the Affidavit and Testimony of Marcellus Speight contemporaneously with this present responsive pleading.

[3] Defendants also cite to a second case, *Robertson v. Norton Co.*, 148 F.3d 905 (8th Cir. 1998). *Doc. # 30*, at 3. However, *Robertson* is inapposite to the circumstances of this matter and Lt. Crosby's qualifications. *Robertson* addressed a very particularized question of expert witness opinions which was unique to the facts of that specific case, namely expert opinions regarding warning labels. *Id.* at 907 ("Our prior opinions have noted problems with expert testimony regarding the adequacy of product warnings . . . [W]hile [the expert] was undoubtedly qualified to testify about a manufacturing defect in an exploding ceramic grinding wheel, that did not qualify him as an expert on grinding wheel warnings. He had never designed a warning for a ceramic product. His knowledge of ceramics would not provide the expertise on 'questions of display, syntax, and emphasis' that the jury would expect from a bona fide warnings expert."). Or, in other words, while the expert's experience with respect to the equipment at its safe operation was sufficient to make him an expert for that purpose, his experience was not in language and linguists and therefore he could not give expert testimony as to the wording of a product warning.

to offer expert witness testimony from a law enforcement officer in support of her claims. *Id.* at 570-71. Under the legal analysis offered by the court, "[p]olice officers may be qualified by their experience to testify as expert witnesses." *Id.* at 571 (*citing United States v. Boykin*, 986 Fed.2d 270, 275 (8th Cir.1993)). However, the court ultimately rejected the expert/officer's testimony based on factual considerations, finding that there was not a "close fit" between the experience and opinion as "there was no evidence that [the expert/officer] had any experience with . . . strip searches." *Id.* at 571. In other words, if the expert/officer had experience with strip-searches – either by conducting or supervising others who conducted strip-searches – then the expert/officer's experience and opinions would have been a "close fit" and likely satisfied the "liberal" admissibility requirements of the *Daubert* standard..

With respect to this present matter, Lt. Crosby does satisfy the *Schmidt* "close fit" test. Unlike the expert/officer in *Schmidt* who had never conducted a strip-search, Lt. Crosby has been personally involved in executing search warrants "many times," including warrants of both residences and businesses. *Doc. # 29, Exhibit B*, at pp. 37-38. Further, Lt. Crosby was a watch commander for approximately five (5) years with experience in "the day-to-day management of the officers and supervisors under [his] command" and "investigation of other alleged misconduct and misdeeds by the officers under [his] command." *Id.* at p. 36. Finally, Lt. Crosby was also involved with Jacksonville, Florida's "DART team" which is a "cooperative effort between the Jacksonville Sheriff's Office, code enforcement, animal control, property inspectors and so forth, that do address problem properties." *Id.* at 38-39. Thus, Defendants' challenge to Lt. Crosby, under the *Schmidt* "close fit" test, is without merit and should be denied.

    **B.**    **Defendants' contentions that Lt. Crosby is offering impermissible legal conclusions are without merit and contrary to well-established federal case law.**

While an expert in a police misconduct case is prohibited from testifying as to the reasonableness of an officer's conduct under Fourth Amendment standards, the expert's testimony may be proper with respect to other issues. *Sloan v. Long*, No. 4:16-CV-86-JMB, 2018 WL 1243644, at * 3 (E.D. Mo. Mar. 9, 2018). For one, expert testimony can be used to assist the jury in understanding best practices or the range of options available to an officer in a given set of circumstances. *Id.*, 2018 WL 1243644, at *3 (allowing expert testimony regarding national standards for police conduct); *Jones v. Slay*, No. 4:12-CV-2109-CAS, 2014 WL 2804407, at *1 (E.D. Mo. June 20, 2014)(allowing an expert to testify to prevailing standards in the field of law enforcement for supervision, training, investigation, and discipline of officers). For another, courts have allowed expert testimony regarding law enforcement conduct when that testimony "differentiat[es] between officers' testimony that *they saw no 'law enforcement' or 'legitimate' reason* for [a defendant officer's actions] and testimony that [the] actions were *objectively unreasonable*." *Peters v. Woodbury County*, 979 Fed.Supp. 2d 901, 923 (N.D. Iowa 2013)(*aff'd sub. nom. Peters v. Risdahl*)(quoting *U.S. v. Perkins*, 470 Fed.3d 150 (4th Cir. 2006)(allowing that an expert could testify that he "personally believed that the force used . . . was reasonable under the circumstances, but he would not be allowed to opine that the use of force satisfied the legal standard of reasonableness"). As explained by the *Peters* court:

> The officers' responses that they personally saw no reason for Perkins's kicks provided the jury with concrete examples against which to consider the more abstract question of whether an objectively reasonable officer would have employed the same force. The Government's questions were not couched in terms of objective reasonableness; instead, they honed in on [the experts'] personal assessments of Perkins's use of force. We recognize that this distinction is a fine one. When the common and legal meanings of a term are not easily unfurled from each other, however, as is certainly the case with reasonable, it is difficult for us to conclude that testimony was unhelpful to the jury unless the testimony actually framed the term in its traditional legal context.

> In this case, then, Rule 704 justifies differentiating between the officers' testimony that they saw no law enforcement or legitimate reason for Perkins's kicks and testimony that Perkins's actions were objectively unreasonable . . . Thus, Perkins teaches the following: (1) an expert may provide opinions that are phrased in such a manner as to avoid the baseline legal conclusion, for example, the reasonableness of the force used; (2) an expert may also respond to hypothetical or abstract questions about the reasonableness of the force used in stated circumstances; (3) an expert may also offer a personal assessment of the use of force, such as that the expert did or did not see any reason for the force used in the incident in question; but (4) an expert may not opine that the conduct in question transgressed the applicable legal standard, such as objective reasonableness.

*Id.* (internal citations omitted). Finally, other courts from the various circuits have relied on expert testimony in cases clearly analogous to this one, i.e., expert testimony on the reasonableness of an officer's actions where the plaintiff alleges an unconstitutional seizure of a dog. *See*, *e.g.*, *See Branson*, 03090-REB-NYW, *Doc. # 87*, at *6 (denying a defendant officer's motion to exclude the expert testimony of Lt. Crosby and two other proposed experts); *Grant v. City of Houston*, 2014 U.S. Dist. LEXIS 139963, *32-33 (S.D. Tex. Sept. 30, 2014)(relying on expert reports assessing the reasonableness of the officer's use of force); *Viilo v. Eyre*, 547 Fed.3d 707, 712 (7th Cir. 2008) (citing to the plaintiff's "evidence from two experts who concluded that . . . [the dog] would not have posed a threat").

Lt. Crosby clearly knows his role as an expert and is mindful of the fact that legal conclusions are the province of this Court and the jury. He has expressed his opinions in terms of "best practices" rather than "unlawful." *See e.g.*, *Doc. # 29*, *Exhibit A*, p. 7-8, Opinion No. 8 ("widely known and accepted best practices within the field of police encounters with dogs"); Opinion No. 10 ("departed from reasonable and well-recognized best professional practices"). He is also careful to express his opinions in terms of his personal perspective and experience, as approved by the *Peters* court. *Id.*, Opinion No. 1 ("in my professional opinion"); Opinion No. 2

("[b]ased on my experience . . . I would have prohibited one of my officers from . . ."; Opinion No. 3 ("[b]ased on my experience and training"); Opinions Nos. 6 - 8, 10 ("in my professional opinion").

However, Defendants still contend that Lt. Crosby is offering nothing more than improper legal conclusions. Defendants' claims are extremely vague and made all the more so by their lengthy citation to and reliance upon case law that is clearly inapposite and unhelpful for this present matter. For example, in objecting to Lt. Crosby's Opinions Nos. 1 - 2, Defendants cites to three federal cases and then simply conclude, without analysis, that "[i]n opining on the constitutionality of the warrant to search 3036 Caprock Court, Mr. Crosby is issuing a 'superfluous' legal conclusion like the testimony excluded in *Farmland*, *Lipp*, and *McCabe*." *Doc. # 30* at 5. Defendants, however, fail to offer any specific analysis or comparisons between Lt. Crosby's testimony and the testimony in their cited cases. Instead, they simply accuse him of attempting to "masquerad[e] as another judge." *Id.* Accordingly, this makes it very difficult to respond to Defendants' accusations and objections, since they have not made it clear as to which specific statements or opinions which they believe to offer improper legal conclusions.

To the extent that a response to these vague and generic objections is required and can be made, Plaintiff notes that Defendants' three cited cases are actually string citations from the Court's opinion in *Lipp v. Ginger C, L.L.C.*, Case No. 2:15-cv-04257-NLK, 2017 U.S. Dist. LEXIS 7413 (W.D. Mo. 2017). As is made clear by the court in *Lipp*, these cases involved a very narrow issue under the *Daubert* standard, namely the acceptability of lawyers, professors, and like professionals as expert witnesses, with the court writing:

> Likewise, Mr. White's opinions regarding the sufficiency of the evidence supporting Plaintiffs' joint venture theory and his ultimate conclusions about the lack of a joint venture relationship between Ginger C and ACC should be excluded. *See Farmland Indus. v.*

11

> *Frazier-Parrott Commodities, Inc.,* 871 Fed.3d 1402, 1409 (8th Cir. 1989) ("[S]pecial legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case."); *McCabe v. Macaulay,* 2007 WL 625569, at *3 (N.D. Iowa Feb. 26, 2007) ("[F]ederal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case.").

*Lipp*, Case No. 2:15-cv-04257-NLK (excluding several proffered experts who were also attorneys along with another proffered expert in real estate contracts). Thus, as Defendants have failed to point to any words or statements made by Lt. Crosby in either his written opinion or deposition that they believe to be offering an impermissible legal conclusion, and, as defined by Defendants' own cited cases of *McCabe*, *Farmland*, and *Lipp*, Plaintiff is uncertain as to how to respond except to state that Lt. Crosby is not an attorney and has never claimed to be. Therefore, Defendants' cited case law appears completely inapposite to the matters at hand.

Likewise, with respect to Lt. Crosby's Opinions 3 - 6, Defendants again offer nothing more than the bare and vague claim that Lt. Crosby's opinions are simply "improper legal conclusions." Defendants, here again, fail to point to any specific opinions or statements offered by Lt. Crosby to which they object. Instead, they simply again assert that "to the extent that Mr. Crosby opines that the use of the TAC team to execute the warrant was not objectively reasonable, such opinions constitute improper legal conclusions." *Doc. # 30*, p. 8. However, Lt. Crosby does not use the term "objectively unreasonable" anywhere in his Opinions Nos. 3 – 6 and instead leaves the matter to the jury to determine whether or not these actions violate the legal standard for "objectively unreasonable."

Finally, with respect to Defendants' objections to Lt. Crosby's Opinions Nos. 7 - 10, Defendants finally point to language that they find objectionable, namely Lt. Crosby's singular

uses of the phrases "without reasonable and objective justification," "objectively unreasonable," "unreasonable," and "not a reasonable response." *Id.* at 9. As noted by the *Peters* court, "[w]e recognize that this distinction is a fine one . . . [w]hen the common and legal meanings of a term are not easily unfurled from each other, however, as is certainly the case with reasonable, it is difficult for us to conclude that testimony was unhelpful to the jury unless the testimony actually framed the term in its traditional legal context." *Peters*, 979 Fed.Supp. 2d at 923. Moreover, Defendants' objections to Lt. Crosby's Opinions Nos. 7 - 10 and use of the four contested phrases seem to speak to the form of his statements and not to their substance. *Doc. # 30*, at 10. Defendants argue that "[n]one of the Opinions are hypothetical statements alleging that *if* a reasonable police officer planned to serve a warrant under circumstances like those at 3036 Caprock Court, that reasonable officers would have performed additional surveillance, or attempted to use nonlethal force, or taken more time to evaluate the situation inside the residence." *Id.* Thus, it appears that Defendants' objections are not to what Lt. Crosby said but rather to how he said it.

Plaintiff does not here wish to quibble about "fine distinctions" between "the common and legal meanings of a term [which] are not easily unfurled from each other." However, Defendants' proposed remedy of striking Lt.'s Crosby's entire testimony based on a few, possibly inartful uses of certain words a mere four times in a two page summary report is extreme and would be unjust and unduly prejudicial towards Plaintiff. Moreover, this Court has other less extreme remedies to redress this issue, if the Court determines it needs addressing. Lt. Crosby could be asked to submit an amended report deleting the offending terms in his Opinions Nos. 7 - 10 or asked to restate his opinions more carefully in light of this "fine distinction." Additionally, it is within the power of this Court to instruct counsel for the parties as to the
13

appropriate scope of cross-examination or to instruct the jury as to the proper scope and use of expert testimony. Thus, to the extent that this Court may find Lt. Crosby's potentially inartful word choice in these four instances problematic, Plaintiff requests the opportunity to correct these missteps.

> C. **Lt. Crosby's Testimony Will Be Useful to Jury and Provide the Assistance that the Jury Requires.**

Defendants also object to Lt. Crosby's Opinions Nos. 8 and 10 regarding Defendants' interactions with Kiya. In so doing, Defendants acknowledge that Lt. Crosby is qualified by his experience to testify into this matters. *Doc. # 30* at 11. However, Defendants still object to Lt. Crosby's testimony on several baseless grounds.

As an initial matter, Defendants have either misunderstood Lt. Crosby's opinions and testimony or are willfully attempting to do so. While Defendants assert that Lt. Crosby's testimony speaks to "whether St. Louis County's policies and training for canine encounters were so deficient as to constitute 'deliberate indifference to constitutional rights of its citizens,'" this is only partially true. *Id.* at 12. In addition to this issue, Lt. Crosby's testimony also speaks to the actions of the individually named Defendants and their individual actions. And, as admitted by Defendants and is clear from his background, Lt. Crosby is undoubtedly qualified to give expert testimony here.

Moreover, Defendants' arguments here are not proper *Daubert* arguments but rather improper attempts to engage in rebuttal testimony that is properly reserved for cross-examination. Defendants mischaracterize Lt. Crosby as opining on "best practices for police officers who encounter aggressive dogs." *Doc. # 30* at 11. However, part of Lt. Crosby's testimony is to opine on whether Kiya was even acting aggressively. Thus, in attempting to dismiss Lt. Crosby and his opinions, Defendants have actually established one of the reasons that

14

he has been retained in this case, namely to assist the jury in resolving the fact issue of whether Kiya did anything to justify Defendant Zavorka firing four shots into her.

Finally, Defendants contend that Lt. Crosby should not be allowed to testify as to best police practices, since this could prejudice the jury against St. Louis County. However, expert testimony regarding best practices is most certainly within the purview of an expert witness. *See See S. Pine Helicopters, Inc.*, 320 Fed.3d at 841 ("industry practice or standards may often be relevant . . . and expert or fact testimony on what these are is often admissible"). Essentially then, Defendants are brazenly asking this Court to "shield its fact finders from confusion or prejudice" by which it means it is asking this Court to prevent the jury from hearing that St. Louis County failed to follow best practices and procedures for non-lethally interacting with family dogs in this community. *Doc. # 30* at 12. Ultimately, this is not legal argument.

## CONCLUSION

The *Daubert* standard demands "liberal" admission of expert testimony. It is clear that Lt. Crosby is qualified to give his expert opinions and that he and his opinions will be of assistance to the jury. In contrast, Defendants' objections to Lt. Crosby and his opinions are improperly formed and utterly without merit. Thus, for the reasons contained herein, Plaintiff Angela Zorich respectfully prays that this Honorable Court deny Defendants' Motion to Exclude Expert Testimony Pursuant to *Daubert* and allow her to fully pursue her claims with the benefit of her retained expert.

Respectfully submitted,

/s/ Daniel J. Kolde
Daniel J. Kolde MO64965
230 S. Bemiston Ave., Suite 1420
Clayton, Missouri 63105
(636) 675-5383
daniel.kolde.law@gmail.com

and,

DOBSON, GOLDBERG, BERNS &
RICH, LLP

/s/ Jerome J. Dobson
Jerome J. Dobson MO33215
Nicole A. Matlock MO66894
5017 Washington Place, Third Floor
St. Louis, MO 63108
314-621-8363
jdobson@dobsongoldberg.com
nmatlock@dobsongoldberg.com

**Certificate of Service**

The undersigned hereby certifies that, on this 28th day of June, 2018, Plaintiff filed a true and accurate copy of the foregoing with the Clerk of this Court and thereby served on all counsel of record for all parties, via operation of that system.

*/s/ Daniel J. Kolde*