UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA ZORICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 4:17-cv-1522 PLC |
| | ) |
| ST. LOUIS COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. On April 23, 2014, Dan Dohrendorf contacted Defendant Robert Rinck regarding Plaintiff Zorich and/or her property located at 3036 Caprock Court, St. Louis, Missouri, 63129. Ex. 16, Rinck Dep., 11-12, 65-66, 96-97 (Feb. 1, 2016); Ex. 17, Dohrendorf Dep., 17-22, 25-31 (June 12, 2018); Exhibit 1, 4.

2. Mr. Dohrendorf and Defendant Rinck had communicated or met on "multiple" occasions prior to April 23, 2014. Ex. 16, Rinck Dep., 96-97 (Feb. 1, 2016); Ex. 17, Dohrendorf Dep., 17-19, 21-23 (June 12, 2018).

3. As of April 23, 2014, Mr. Dohrendorf worked for the Laclede Gas Company. Ex. 17, Dohrendorf Dep., 14-16 (June 12, 2018).

4. Defendant Rinck either worked for the Laclede Gas Company or worked for a third-party contractor who provided contract employees to the Laclede Gas Company. Ex. 19, Rinck Dep., 48-53 (June 19, 2018); Ex. 18, Rinck Supp. Ans. to Interrog., Ans. No. 9.

5. Prior to April 23, 2014, Mr. Dohrendorf and Defendant Rinck communicated or met it was normally in relation to issues with natural gas service at a property. Ex. 16, Rinck Dep., 96-97 (Feb. 1, 2016); Ex. 17, Dohrendorf Dep., 17-19, 21-23, 25 (June 12, 2018).

6. As of April 23, 2014, Mr. Dohrendorf was a neighbor of Plaintiff Zorich and lived about three house away. Ex. 17, Dohrendorf Dep., 33 (June 12, 2018).

7. In April 2014, Mr. Dohrendorf contacted Defendant Rinck to complain about Plaintiff Zorich's barking dog(s). Ex. 17, Dohrendorf Dep., 25-28 (June 12, 2018).

8. On April 23, 2014, Defendant Rinck was assigned to the St. Louis County Police Department's problem properties unit. Ex. 16, Rinck Dep., 27 (Feb. 1, 2016).

9. Defendant Rinck had previously received another complaint regarding Plaintiff Zorich's dog(s) barking while he was assigned to the problem properties unit. Ex. 16, Rinck Dep., 60-61, (Feb. 1, 2016).

10. On the previous occasion when Defendant Rinck received a call about Plaintiff Zorich's dog(s) barking, he indicated to the complainant that barking dogs were not a problem properties concern and suggested that the individual call animal control. Ex. 16, Rinck Dep., 60-61 (Feb. 1, 2016).

11. Prior to contacting Defendant Rinck, Mr. Dohrendorf had made several calls to the St. Louis County Police Department regarding Plaintiff Zorich's dogs. Ex. 17, Dohrendorf Dep., 25-31 (June 12, 2018).

12. On April 23, 2014, Mr. Dohrendorf reported to Defendant Rinck that Plaintiff Zorich's natural gas service had been disconnected. Ex. 16, Rinck Dep., 66 (Feb. 1, 2016); Ex. 17, Dohrendorf Dep., 33-36, 41-44 (June 12, 2018); Exhibit 1, 4-5.

13. Mr. Dohrendorf had walked to Plaintiff Zorich's residence and personally observed a locking mechanism on the natural gas meter, indicating that the service had been suspended. Ex. 17, Dohrendorf Dep., 41-44 (June 12, 2018).

14. Mr. Dohrendorf disconnected natural gas service in the scope of his employment and could recognize when service had been interrupted by a lock or plug. Dohrendorf Dep., 43 (June 12, 2018).

15. Mr. Dohrendorf checked to see if Plaintiff Zorich's gas was disconnected for no other reason that he "was having a problem with this property and [he[ knew that that was a requirement to be on." Ex. 17, Dohrendorf Dep., 42 (June 12, 2018).

16. In April 2014, there were two officers assigned to the St. Louis County Police Department's problem properties unit, Officer Timothy Rehagen and Defendant Rinck. Ex. 16, Rinck Dep., 67 (Feb. 1, 2016); Ex. 20, Rehagen Dep., 23 (May 30, 2018).

17. As of April 2014, the patrol areas for the problem properties used were assigned based on north and south/west divisions created by using Interstate 40/64 as a boundary line. Ex. 20, Rehagen Dep. 23-24 (May 30, 2018).

18. As of April 2014, Officer Rehagen was assigned to the areas of St. Louis County that were located geographically south of Interstate 40/64. Ex. 20, Rehagen Dep. 23-24 (May 30, 2018); Exhibit 1, 1 (indicating Officer Rehagen as from the West County Precinct).

19. As of April 2014, Defendant Rinck was assigned to the areas of St. Louis County that were located geographically north of Interstate 40/64. Ex. 20, Rehagen Dep., 23-24 (May 30, 2018); Exhibit 1, 1 (indicating Defendant Rinck's patrol assignment as "NORTH").

20. Plaintiff Zorich's residence at 3036 Caprock Court, St. Louis, Missouri 63129 was located south of Interstate 40/64 and outside of Defendant Rinck's assigned patrol area. Ex. 20, Rehagen Dep., 46-47 (May 30, 2018); Ex. 1, 1 (listing Plaintiff Zorich's residence in the "South County Precinct").

21. On April 25, 2014, Defendant Rinck went to Plaintiff Zorich's residence at 3036 Caprock Court. Ex. 1, 5.

22. Defendant Rinck was not accompanied by any additional law enforcement officers but may have been accompanied by one to two civilian housing code inspectors. Ex. 26, Lachance Dep., 14-15 (date); Ex. 1, 5.

23. Officer Rehagen was not present when Defendant Rinck arrived nor when he knocked on the door. Ex. 26, Lachance Dep., 16 (June 20, 2018).

24. On April 25, 2014, Defendant Rinck walked up to the front door of Plaintiff Zorich's residence without any backup or other officers present. Ex. 26, Lachance Dep., 14-16 (June 20, 2018).

25. On April 25, 2014, Defendant Rinck personally observed Plaintiff Zorich's natural gas meter and saw that it was plugged or locked, indicating that the service had been suspended. Exhibit 1, 6.

26. On April 25, 2014, Defendant Rinck confirmed that Plaintiff Zorich's natural gas had been disconnected with a representative of the Laclede Gas Company. Ex. 16, Rinck Dep., 66-67 (Feb. 1, 2016); Exhibit 1, 6.

27. On April 25, 2014, Defendant Rinck observed the exterior deck of Plaintiff's residence and believed that it was in disrepair. Ex. 16, Rinck Dep., 15-16 (Feb. 1, 2016); Exhibit 1, 6.

28. When Defendant Rinck spoke with Plaintiff Zorich on April 28, 2014, he did not make any specific mention of the exterior deck. Ex. 16, Rinck Dep., 21 (Feb. 1, 2016).

29. On April 25, 2014, Defendant Rinck approached the front door of Plaintiff Zorich's residence, knocked on the door, and announced "St. Louis County Police Department." Ex. 16, Rinck Dep., 72-73 (Feb. 1, 2017); Exhibit 1, 7.

30. Someone from inside the home shut and locked the front door and called out "fuck you." Ex. 16, Rinck Dep., 6 (Feb. 1, 2016); Exhibit 1, 7.

31. After the door was shut, Defendant Rinck had no further contact that day with anyone from inside the residence and "didn't discuss anything with the kids . . . [t]he kids never had a conversation with me about why I was there or what I was doing." Ex. 16, Rinck Dep., 21-22 (Feb. 1, 2016); Exhibit 1, 7.

32. On April 25, 2014, Defendant Rinck never requested of anyone at Plaintiff Zorich's residence that he be allowed inside to conduct an interior inspection of the home. Ex. 16, Rinck Dep., 21-22 (Feb. 1, 2016); Exhibit 1, 7.

33. On April 25, 2014, no one at Plaintiff Zorich's home at 3036 Caprock Court denied a request from Defendant Rinck to conduct an interior inspection of the residence. Ex. 16, Rinck Dep., 21-22 (Feb. 1, 2016); Exhibit 1, 7.

34. Prior to leaving Plaintiff Zorich's property on April 25, 2014, Defendant Rinck placed a problem properties notification sticker on Plaintiff Zorich's window. Exhibit 1, 7.

35. The problem properties notification sticker did not list or give any indication of the specific conditions that were of concern. Exhibit 1, 7.

36. On April 25, 2014, Defendant Rinck spoke with one of Plaintiff Zorich's neighbors who told him that "an infant may possibly be residing at the residence [and] the occupant did have a four or five year old daughter who resided at the residence." Ex. 1, 7.

37. After Defendant Rinck left Plaintiff Zorich's property on April 25, 2014, Plaintiff Zorich's son called her at work and told her that the police had been to the home and left a problem properties sticker on the window. Ex. 25, A. Zorich Dep., 75 (Jan. 26, 2016).

38. Plaintiff Zorich immediately "[g]oogled [p]roblem [p]roperties" and located a website and telephone number for which she believed to be the appropriate St. Louis County office. Ex. 25, A. Zorich Dep., 78 (Jan. 26, 2016).

5

39.     Plaintiff Zorich contacted what she believed to be the appropriate office for problem properties but was told by the employee who answered the phone that there was no indication of any issues at her address in the computer and to speak with an employee named "Kim."  Ex. 25, A. Zorich Dep., 78-79 (Jan. 26, 2016).

40.     On April 25, 2014, Plaintiff Zorich left two messages on "Kim's" voicemail requesting return telephone calls.  Ex. 25, A. Zorich Dep., 78-80 (Jan. 26, 2016).

41.     On Monday, April 28, 2014, Plaintiff Zorich again called the number which she found for St. Louis County problem properties and was instructed to call either Officer Rehagen or Defendant Rinck.  Ex. 25, A. Zorich Dep., 80 (Jan. 26, 2016).

42.     Plaintiff Zorich called and spoke with Officer Rehagen.  Ex. 25, A. Zorich Dep., 80-82 (Jan. 26, 2016).

43.     Officer Rehagen told Plaintiff Zorich that her home was being investigated for not having natural gas service but did not request that he or anyone else be allowed to conduct an inspection of the interior of the home.  Ex. 25, A. Zorich Dep., 80-82 (Jan. 26, 2016).

44.     Officer Rehagen instructed Plaintiff Zorich to contact Defendant Rinck as he was the officer in charge of the investigation.  Ex. 25, A. Zorich Dep., 80-82 (Jan. 26, 2016).

45.     On April 28, 2014, Plaintiff Zorich spoke with Defendant Rinck by telephone. Ex. 25, A. Zorich Dep., 92-97 (Jan. 26, 2016).

46.     During their conversation, Defendant Rinck told Plaintiff that someone from inside her home had said "fuck you" to him.  Ex. 25, A. Zorich Dep., 93-94 (Jan. 26, 2016); Ex. 1, 8.

47.     Defendant Rinck told Plaintiff Zorich that her home was being investigated for not having working gas but made no mention of any issues with the exterior deck.  Ex. 16, Rinck Dep., 21 (Feb. 1, 2016).

6

48. Defendant Rinck told Plaintiff Zorich that he "would like to meet at the property and conduct an inspection." Ex. 16, Rinck Dep., 22 (Feb. 1, 2016).

49. During their conversation Plaintiff Zorich expressed confusion stating "What do you mean, *I don't understand*, what's going on?". Exhibit 1, 8-9. (emphasis added).

50. In response to Defendant Rinck's request to inspect the interior of her home, Plaintiff Zorich asked to speak with her husband. Ex. 16, Rinck Dep., 22 (Feb. 1, 2016); Ex. 25, A. Zorich Dep., 95 (Jan. 1, 2016); Ex. 1, 8-9.

51. Defendant Rinck did not object to Plaintiff Zorich's request to speak with her husband but instead stated that the "investigation would continue." Ex. 16, Rinck Dep., 22 (Feb. 1, 2016); Ex. 25, A. Zorich Dep., 96 (Jan. 26, 2016) Exhibit 1, 8-9.

52. Plaintiff Zorich stated that she "didn't understand" what he meant but Defendant Rinck again simply repeated that the "investigation would continue." Ex. 1, 8-9.

53. Defendant Rinck did not tell Plaintiff Zorich that he was intending to seek a search warrant to inspect the interior of her residence. Ex. 16, Rinck Dep., 23, 78 (Feb. 1, 2016).

54. On April 28, 2014, Defendant Rinck had already decided that he "was going to contact the prosecuting attorney's office and determine whether or not a search warrant would be issued . . ." Ex. 16, Rinck Dep., 23 (Feb. 1, 2016).

55. If Plaintiff Zorich had called Defendant Rinck with a time to search the interior of her residence, "there wouldn't have been a reason to get a warrant." Ex. 16, Rinck Dep., 32 (Feb. 1, 2016).

56. On April 29, 2014, Defendant Rinck went to the St. Louis County Counselor's Office before 10:00 a.m. to obtain a search warrant for Plaintiff Zorich's residence. Ex. 2.

57. Defendant Rinck did not tell Beverly Taylor of the County Counselor's office that he had spoken to Plaintiff Zorich the day prior. Ex. 29, Taylor Dep., 36-37 (June 15, 2018).

7

58. In his affidavit in support of his search warrant application, Defendant Rinck attested that "St. Louis County Problem Properties Unit has responded to the property to investigate the complaint and were denied entry for an inspection." Ex. 2.

59. Defendant Rinck did not include or make mention of the fact that he had spoken to Plaintiff Zorich the day prior either in his affidavit. Ex. 2.

60. In his affidavit, Defendant Rinck attested that "St. Louis County Police officers have confirmed that the gas service is disconnected to the property since March 2014." Ex. 2.

61. In his search warrant, Defendant Rinck alleged that Plaintiff Zorich's residence was "being used in violation of St. Louis County Revised Ordinance Chapters 1110 (Property Maintenance), 1102 (Electrical), 1103 (Plumbing), 1108 (Mechanical) *and/or* a public nuisance." Ex. 2 (emphasis added).

62. Apart from the suspended natural gas service and exterior deck that he claimed to be in disrepair, Defendant Rinck had no other information regarding any potential housing code violations. Ex. 16, Rinck Dep., 16-17 (Feb. 1, 2016).

63. The words "natural gas," "disconnection" or "exterior deck" do not appear on the face of Defendant Rinck's warrant. Ex. 2.

64. The warrant obtained by Defendant Rinck authorized him to "search the said premises above described within 10 days after the issuance of this warrant by day . . . and abate said public nuisance *and/or* if said above described property or any part thereof be found on said premises by you, that you seize the same and take the same into your possession." Ex. 2.

65. On April 23, 2014, Defendant Rinck served a search warrant on Dunnideer in St. Louis, Missouri. Ex. 21.

8

66. The warrant obtained by Defendant Rinck for the property on Dunnideer contained identical and boilerplate language to the warrant obtained by Defendant Rinck for Plaintiff Zorich's property. Exs. 2, 16.

67. St. Louis County Ordinances 1110, 1102, 1103, and 1108 provide procedures for addressing violations of those provisions which include sending a notification letter by U.S. mail to the property owner advising them of the need to either abate or request a hearing before the Board of Appeals. Exs. 3, 4, 5, 6.

68. At 10:59 a.m., on Tuesday, April 29, 2014, Judge Adler of the St. Louis County Municipal Court signed Defendant Rinck's search warrant. Ex. 2.

69. Defendant Rinck contacted a supervisor in the tactical operations unit to have his warrant executed by that unit. Ex. 23, Pfanstiel Dep., 73-74 (Apr. 11, 2018).

70. At approximately 12:41 p.m. – less than one hour after the TAC unit had assembled – the TAC unit made entry into Plaintiff Zorich's residence. Exhibit 1, __.

71. Defendant Pfanstiel was the sergeant in charge of the TAC unit that made entry into Plaintiff Zorich's residence, reviewed the warrant, and participated in the planning the entry and gave final approval for the entry plan. Ex. 22, Fumagalli Dep., 94-95 (April 12, 2018); Ex. 23, Pfanstiel Dep., 76, 87 (April 11, 2018); Exhibit 1, 15; Exhibit 27.

72. Defendant Fumagalli was the team (squad) leader of the TAC unit that made entry into Plaintiff Zorich's residence, reviewed the warrant, and participated in planning the entry into the home. Ex. 22, Fumagalli Dep., 8, 20 (April 12, 2018); Exhibit 27.

73. Defendant Zavorka was the point person on the TAC unit, reviewed the warrant, and participated in planning the entry into the home. Ex. 22, Fumagalli Dep., 84 (April 12, 2018); Ex. 24, Zavorka Dep., 42 (January 29, 2016); Exhibit 27.

74. The TAC unit that made entry into Plaintiff Zorich's residence was comprised of nine members who carried Rock River M-4 automatic rifles. Exhibit 1, 15.

75. The TAC unit entered Plaintiff Zorich's residence via a dynamic, no-knock entry (i.e., outside of regular knock-and-announce protocols). Exhibit 1, 15.

76. Defendant Zavorka was the first officer through the door and within seconds fired four shots from his Rock River M-4 rifle into Kiya in a maneuver known to the TAC officers as a "double double" (consisting of two, two round bursts). Ex. 24, Zavorka Dep., 42, 71 (January 29, 2016); Ex. 31, Higginbotham Dep., 71-72 (May 24, 2018); Ex. 22, Fumagalli Dep., 116 (April 12, 2018); Exhibit 1, 15.

77. At the moment that she was shot, Kiya was approximately fifteen to eighteen feet from Defendant Zavorka. Ex. 24, Zavorka Dep., 5 (January 29, 2016).

78. Defendant Zavorka did not hear Kiya bark or growl at him prior to shooting her. Ex. 24, Zavorka Dep., 5 (January 29, 2016).

79. Defendant St. Louis County has no formal policies nor offers no formal training to its officers regarding constitutional, safe, and proper interactions with companion animals, including family dogs. Exhibit 8, Ans. No. 17.

80. At the moment Kiya was shot, she was located just a few feet from where Plaintiff Zorich's son, Joseph, was sitting on the couch holding his six-month old son, Chase (Plaintiff Zorich's grandson). Ex. 28, J. Zorich Dep., 64 (November 30, 2016).

81. At the moment the TAC unit made its entry, Plaintiff Zorich was in the kitchen with Briget Haman, the mother of Plaintiff Zorich's grandson, Chase. Ex. 25, A. Zorich Dep., 100 (January 26, 2016); Ex. 30, B. Haman Dep., 12 (November 30, 2016).

82. When they entered the living room area, Plaintiff Zorich and Ms. Haman put her hands up. Ex. 25, A. Zorich Dep., 110 (January 26, 2016); Ex. 30, B. Haman Dep., 18 (November 30, 2016).

83. When Plaintiff Zorich entered her living room, she saw officers pointing guns at her sons, including Joseph who had one arm in the air while struggling to hold on to Chase with his other arm. Ex. 25, A. Zorich Dep., 109-111 (January 26, 2016); Ex. 28, J. Zorich Dep., 64-65 (November 30, 2016).

84. Plaintiff Zorich saw Kiya lying on the floor, in her own blood and waste and struggling to breathe. Ex. 25, A. Zorich Dep., 116-117, 171 (January 26, 2016).

85. Plaintiff Zorich and her son were forced to their knees where Kiya lay dying. Ex. 25, A. Zorich Dep., 115, 119-120 (January 26, 2016).

86. An animal control officer entered the home and carried Kiya's body out to the sidewalk. Ex. 25, A. Zorich Dep., 124-125 (January 26, 2016).

87. Plaintiff Zorich was arrested for outstanding traffic tickets, including violation of an electric signal, failure to register a vehicle, and speeding. Exhibit 1, 5, 9-10.

88. Defendant Rinck conducted an interior inspection of Plaintiff Zorich's residence along with one to two civilian housing code inspectors. Exhibit 1, 10-11.

89. As a result of this inspection, Plaintiff Zorich received citations for housing code violations and ordered to vacate her home. Exhibit 1, 12; Exhibit 9; Exhibit 10.

90. After being homeless for approximately one month, Plaintiff Zorich corrected the violations and was able to return to her home. Ex. 25, A. Zorich Dep., 167-170 (January 26, 2016).

91. As of April 29, 2014 and pursuant to the formal policy of Defendant St. Louis County, "The Tactical Operations Unit is responsible for executing *all* search warrants. Exhibit

11 (emphasis added); Ex. 19, Rinck Dep. 65 (June 14, 2018); Ex. 20, Rehagen Dep., 85 (May 30, 2018); Ex. 31, Higginbotham Dep., 51 (May 24, 2018).

92.     As of April 29, 2014, the formal policies of Defendant St. Louis County required that, prior to the execution of a warrant, the tactical operations unit "obtain[] complete information [regarding] [s]uspect/occupant information, including information on children, elderly persons, or *animals present*." Exhibit 11, 3.

93.     As of April 29, 2014, the formal policies of Defendant St. Louis County required that, prior to the execution of a warrant, "particular attention should be paid to . . . *animals present*." Exhibit 11, 2-3.

94.     On June 1, 2014, approximately one month after Defendant Zavorka killed Kiya, Defendant St. Louis County removed all language about animals from Tactical Operations Unit Procedure 94-34. Exhibit 12.

95.     According to Defendant Zavorka, it was the preference of the TAC unit to receive at least twenty-four (24) hours' prior notice before executing a search warrant. Ex. 24, Zavorka Dep., 21-22 (January 29, 2016).

96.     The TAC raid on Plaintiff Zorich's home occurred less than two hours after Defendant Rinck obtained his warrant and less than one hour after the TAC unit was requested to execute the warrant. Exhibit 1; Exhibit 27.

97.     Pursuant to Tactical Operations Policy 94-34, "[u]pon receiving a request to execute a search warrant, the squad supervisor will notify the Communications Bureau Supervisor." Exhibit 11, 1.

98.     The TAC unit's entry plan for Plaintiff Zorich's residence was developed by Defendants Zavorka and Fumagalli. Ex. 22, Fumagalli Dep., 81, 110 (April 11, 2018).

99. Defendants Zavorka and Fumagalli recommended that the warrant be served no-knock based on information provided by Defendant Rinck. Ex. 22, Fumagalli Dep., 87-88, 94 (April 12, 2018).

100. Defendants Zavorka, Fumagalli, and Pfanstiel knew that there could be companion animals, including family dogs, in Plaintiff Zorich's residence. Ex. 22, Fumagalli Dep. 87-88, 99-100 (April 12, 2018); Ex. 24, Zavorka Dep., 51, 55 (January 29, 2016); Ex. 23, Pfanstiel Dep., 53 (April 11, 2018).

101. Despite knowing that there might be dogs whom they would encounter in the home, Defendants Zavorka, Fumagalli, and Pfanstiel did not develop any plan for interacting with such dogs in a non-lethal manner. Ex. 13, Interrogatory No. 19; Ex. 14, Interrogatory No. 17; Ex. 15, Interrogatory No. 17.

102. To the extent that Defendants Zavorka, Fumagalli, and Pfanstiel did consider the fact that they might encounter family dogs in Plaintiff Zorich's home, it was to simply note that there was a "noose" (properly known as a catch-pole) in the TAC truck. Ex. 13, Interrogatory No. 19; Ex. 14, Interrogatory No. 17; Ex. 15, Interrogatory No. 17.

103. The "noose" was not removed from the truck or utilized on April 29, 2014 at Plaintiff's home. Ex. 22, Fumagalli Dep. 100-101 (April 12, 2018); Ex. 23, Panstiel Dep., 51, 35 (April 11, 2018); Ex. 24, Zavorka Dep., 86-87 (January 29, 2016).

104. The entry plan and decision to execute the warrant no-knock was ratified by Defendant Pfanstiel. Ex. 23, Pfanstiel Dep., 87 (April 11, 2018).

105. Defendants Zavorka, Fumagalli, and Pfanstiel did not take any steps or actions to attempt to verify the information provided by Defendant Rinck. Ex. 22, Fumagalli Dep., 89 (April 12, 2018); Ex. 23, Pfanstiel Dep., 45 (April 11, 2018); Ex. 24, Zavorka Dep. 59-60 (January 29, 2016).

106. Defendants Zavorka, Fumagalli, and Pfanstiel had no reason to believe that there were any firearms in Plaintiff Zorich's residence. Ex. 24, Zavorka Dep., 62 (January 29, 2016).

107. Defendants Zavorka, Fumagalli, and Pfanstiel all reviewed Defendant Rinck's warrant. Ex. 22, Fumagalli Dep., 84 (April 12, 2018); Ex. 23, Pfanstiel Dep., 76 (April 11, 2018).

108. Defendant Zavorka saw nothing on the face of Defendant Rinck's warrant or in his description of his previous visit to Plaintiff Zorich's home to be illegal. Ex. 24, Zavorka Dep., 60-61 (January 29, 2016).

109. While Defendant Fumagalli reviewed the warrant, he only checked that it was signed and dated, that it was not out of ten days of being signed, and assess the risks or observe the reasons for the warrant execution. Ex. 22, Fumagalli Dep., 38 (April 12, 2018).

Respectfully Submitted

/s/ Nicole A. Matlock
Jerome J. Dobson, #33215
Nicole A. Matlock, #66894MO
Dobson, Goldberg, Berns & Rich, LLP
5017 Washington Place, Third Floor
St. Louis, MO 63108
Telephone: (314) 621-8363
Fax: (314) 621-8366
jdobson@dobsongoldberg.com
nmatlock@dobsongoldberg.com

/s/ Daniel J. Kolde
Daniel J. Kolde, #MO64965
230 S. Bemiston Ave., Suite 1420
St. Louis, MO 63105
Telephone: (636) 675-5383
daniel.kolde.law@gmail.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was served on Defendants' counsel of record, listed below, by operation of the Court's ECF/CM system on July 13, 2018:

Priscilla F. Gunn
St. Louis County Counselor's Office
41 S. Central Avenue
Clayton, MO 63105


                                                                             /s/Nicole A. Matlock